COMMONWEALTH *VS*. ANGEL ECHAVARRIA.

Essex. November 3, 1998. - December 22, 1998.

Present: WILKINS, C.J., LYNCH, FRIED, MARSHALL, & IRELAND, JJ.

*Identification. Practice, Criminal,* Assistance of counsel, Motion to suppress, Instructions to jury, Capital case. *Homicide. Joint Enterprise. Evidence,* Identification, Joint enterprise.

The record of a murder trial did not demonstrate that the main Commonwealth witness was incompetent to testify, and defense counsel was not ineffective for having failed to move for a voir dire on the issue. [595-596]

At the trial of indictments, the judge's findings of fact were not clearly erroneous and supported his conclusion that the identification procedures used by the police were not unduly suggestive. [596]

At the trial of indictments, a motion to suppress several identifications of the defendant would have been unavailing, and defense counsel was not ineffective for not filing such a motion. [596-597]

Evidence at a criminal trial was sufficient to support the defendant's conviction of murder in the first degree on a theory of deliberate premeditation. [597]

At the trial of an indictment for murder in the first degree, the evidence was sufficient for a rational jury to find that the defendant was a joint venturer in the killing; further, there was no error in the judge's instructions to the jury on joint venture, and defense counsel was not ineffective for failing to object to the instructions. [598]

INDICTMENTS found and returned in the Superior Court Department on September 7, 1994.

A pretrial motion to suppress evidence was heard by *Charles M. Grabau*, J., and the cases were tried before him.

*Robert J. Carnes* for the defendant.

*Robert J. Bender*, Assistant District Attorney, for the Commonwealth.

FRIED, J. The defendant, Angel Echavarria, was convicted of murder in the first degree on a theory of deliberate premeditation. His principal claims relate to the sufficiency of the evidence, particularly as it bears on the identity of the defendant as a perpetrator of the crime, the procedure employed to procure

a pretrial identification, and the instructions regarding his presence at the scene of the crime.[1]

# I

The defendant and another man[2] gained entrance to an apartment from which drugs were sold. While they were in the apartment Isidoro Rodriguez, who lived in the apartment at the time, and his brother Daniel Rodriguez, the victim, returned from a restaurant. As Daniel and Isidoro approached the apartment Isidoro heard the volume on the television set inside turned up very high. On entering they were confronted by the defendant and another man, both of whom were armed and unknown to Isidoro. Daniel turned to run and one of the two armed men went after him. Having brought Daniel back, the two armed men forced Daniel and Isidoro to the floor. The defendant tied Isidoro's hands, told Isidoro not to look at him, marched him into a bedroom, ordered him to lie on the floor, and threw a shirt over his face. On the way to the bedroom Isidoro saw the feet of several people lying on the floor in another room. Daniel remained behind. Less than one minute later Isidoro heard a "knocking sound" from the direction of the bathroom. He struggled to untie himself and saw several people, one of whom he knew and who was staying with him in the apartment, hurry from the apartment. The noise from the television was still at a high volume. Isidoro found Daniel, bound hand and foot, in the bathroom. He had been shot twice in the head, apparently at close range and through a pillow that had been used to muffle the noise of the shots.

Isidoro, who does not speak English, was the principal witness for the prosecution. Shortly after the killing he had picked out a person, who was not one of the men, from a photographic array, saying that he looked like one of them. Several days later he saw the defendants in a barber shop in the neighborhood, but, before he could summon a friend who spoke English, the two men had left. He saw the men again a short time later in a nearby restaurant. This time Isidoro and his friend got to a

[1]The defendant was also convicted of armed assault in a dwelling and armed robbery and moved for required findings of not guilty with respect to each of the charges. His claims regarding his identification as the perpetrator of all these crimes depend on the points dealt with in this opinion.

[2]Echavarria was tried along with a codefendant. The judge ordered entry of findings of not guilty for the codefendant notwithstanding the jury's verdicts.

police station in time to have police officers make contact with the two defendants, and eventually arrest warrants were obtained, and the two were arrested.

A second person, Gary Sevinor, testified that he had come to the apartment on the day of the killing, as he had on other occasions, to buy drugs. While he was there two men with guns forced him to lie on the floor, tied him up, and dragged him to a closet in a bedroom. They took his watch, keys, and wallet. Shortly thereafter, Sevinor said he heard "the music go up," and then he heard two shots. When someone untied him, Sevinor quickly left the apartment. Although Sevinor said nothing to the police when he read about the killing in the newspaper, one year later while awaiting trial on unrelated matters he was contacted by the police and spoke to them about his knowledge of the killing. He identified the defendant from the same photographic array shown Isidoro, although when shown a photocopy of the array he indicated some level of uncertainty.

At the trial both Isidoro and Sevinor identified the defendant as one of the two armed men who had bound them and who had appeared to be in command during the events in the apartment.

II

A

The defendant makes claims before this court that relate in one way or another to his identification as one of the two armed men present in the apartment during the events to which Isidoro and Sevinor testified.

Most fundamentally, the defendant argues that Isidoro was not competent to testify. He apparently could not tell time, did not know what city he was in, had difficulty expressing judgments of distance in feet, did not know what year it was, and showed other such failings. The defendant claims that in light of these deficiencies his trial counsel should have moved for a voir dire on Isidoro's competence to testify, and that his failure to do so constituted ineffective assistance. Isidoro was subjected to one and one-half days of intense cross-examination. Although he certainly exhibited the failings pointed out now by the defendant, and these were made evident to the jury as well and emphasized by counsel in his cross-examination and in his clos-

ing argument, our examination of the record leads us to conclude that Isidoro was far from failing the not very stringent test of competence we have set forth: that the witness have "the general ability or capacity to 'observe, remember and give expression to that which [he] ha[s] seen, heard, or experienced,' " and that he have "understanding sufficient to comprehend the difference between truth and falsehood." *Commonwealth* v. *Trowbridge*, 419 Mass. 750, 754 (1995), quoting *Commonwealth* v. *Brusgulis*, 398 Mass. 325, 329 (1986). What appears from the record is that Isidoro was an illiterate man, recently arrived in this country, not speaking any English, who had received little or no formal education. But this does not mean that he was unable to observe and report on the events that were the subject of his testimony. Defense counsel made what use he could of these circumstances. Because there was an insufficient basis to exclude Isidoro's testimony on the ground of incompetency, counsel was not ineffective in failing to call for a voir dire on this score.

The defendant also argues that Sevinor's pretrial identification of the two codefendants from photographic arrays should have been suppressed as unduly suggestive. The defendant did make a motion to this effect, which the judge denied, stating that the photographic arrays used by the police were assembled "with a circumspect eye and appear impartial," and concluding that the procedures used "were not unduly suggestive." The judge articulated the correct standard, placing on the defendant the burden of proving that the identification procedures were " 'so unnecessarily suggestive and conducive to irreparable mistaken identification' as to deny the defendant due process of law." *Commonwealth* v. *Venios*, 378 Mass. 24, 27 (1979), quoting *Stovall* v. *Denno*, 388 U.S. 293, 302 (1967). See *Commonwealth* v. *Johnson*, 420 Mass. 458, 463 (1995). His subsidiary findings of fact are not to be disturbed, absent clear error. *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 743 (1990), and cases cited. We have examined the array ourselves and see no reason to differ from the judge's conclusion.

The defendant's trial counsel did not move to suppress Isidoro's several identifications of the defendant, and the defendant now claims that this constituted ineffective assistance of counsel. The focus of the claim is that the police delayed about one month before showing Isidoro the same photographic array later shown to Sevinor and that they waited another month to conduct

a lineup, at which Isidoro identified the defendant. The claim is entirely without merit. Isidoro saw the man who tied him up and marched him away over a period of minutes. He encountered the defendant by accident in a barbershop and restaurant shortly after the events and pointed him out to the police. It was this identification that led to the arrest. Isidoro identified the defendant in the courtroom. And the array he was shown, the same shown to Sevinor, had already been found to be appropriate. A motion to suppress would have been unavailing and counsel was not ineffective for not making it.

## B

Having determined that the testimony describing the events in the apartment and identifying the two armed men was properly admitted, the defendant's other claims are readily disposed of, for they all go in one way or another to the sufficiency of these narratives to support a conviction of murder in the first degree on a theory of deliberate premeditation.

That the killing was premeditated is amply shown by the events leading up to it: the persons already in the apartment and coming to the apartment were systematically bound and removed from the place where the victim was shot. When Daniel, the victim, turned to run on seeing the two armed men in the apartment, one of them went after him and brought him back. The television or stereo was turned to full volume, suggesting a plan to cover the noise of any shots. The forensic evidence suggests that the victim, who was bound, was shot twice in the head, at close range and through a pillow, which was presumably used to muffle the sound of the shots.

The defendant claims that there was insufficient evidence as a matter of law to allow his convictions to stand. It is true that no one testified that he saw the actual shooting, and there was no ballistic, fingerprint, or other such evidence linking the defendant to it. But the testimony — that the defendant was one of two men seen armed in the apartment, and seemed to be in charge of the situation in which other persons had already been removed to other rooms, that the defendant in this case gave orders to both Sevinor and Isidoro, robbing one of them, and that the gunshots were heard very shortly after Isidoro had come to the apartment with the victim and the two were separated — altogether is sufficient to support the inference that one or the other of the two armed men did the killing.

This, then, lays the predicate for the defendant's other claims in this appeal. There is no evidence which of the two armed men did the shooting, or whether they both did. Therefore the conviction must stand on a theory that they were joint venturers in the killing. If they were, it does not matter which of two joint venturers did the actual killing and the Commonwealth need not prove which is the killer. *Commonwealth* v. *Raymond*, 424 Mass. 382, 388 (1997). The defendant claims that there was insufficient evidence to find a joint venture, and that, even if there were, the judge's instructions allowing the jury to reach that conclusion were defective.

The evidence was sufficient to show that the two were acting in concert as Isidoro and Sevinor were bound, robbed, and led away, and that they were acting in concert when Isodoro's brother, the victim, was separated from him. From this evidence and on proper instructions the jury might reasonably have concluded that the premeditated killing of the victim was also part of the joint venture. But the defendant claims that no proper instruction was given, fastening on a lack of an explicit instruction that the defendant must have been present at the time of the shooting. But it is not the law that the defendant must have been in the bathroom where the shooting took place to be convicted as a joint venturer — if indeed it was not he but the other man who did the shooting. The basic requirement is that he have knowledge of the offense, assist in planning or procuring it, and share the purpose that it be committed. Presence at the scene of the crime, with knowledge that the other intends to commit it and a willingness to help if needed, is but one way to make out the involvement necessary to constitute one a joint venturer. *Commonwealth* v. *Ortiz*, 424 Mass. 853 (1997). The judge's instructions on joint venture, portions of which are set out in the margin,[3] were not only adequate but exemplary, and for that reason defense counsel was not ineffective in failing to object to them.

---

[3] "In order to convict the defendants of taking part in a joint venture, the Commonwealth must convince you that the defendants together actively participated in the commission of the crime or crimes charged, sharing the same mental state or intent. . . .

"The Commonwealth need not . . . prove beyond a reasonable doubt which perpetrator was the principal and which was the abettor, so long as the Commonwealth proves beyond a reasonable doubt that the perpetrators actively participated together and shared the same mental state or specific

# III

The evidence shows a calculated and carefully carried out killing in connection with a robbery at a place used for the distribution of illegal drugs. Nothing calls for the exercise of our extraordinary power under G. L. c. 278, § 33E, to reduce the verdict or to grant a new trial. The judgments are affirmed.

*So ordered.*

---

intent required to commit those crimes.

"The Commonwealth must convince you beyond a reasonable doubt of two essential elements under this theory of joint venture. First, that a defendant intentionally assisted the other individual — and I'll call him the principal, the person actually committing or perpetrating the basic crime. . . . And the second, that he so assisted while sharing with the principal the mental state required for the crime. That is, that he was willing that the crime be committed. . . .

"With respect to the first element, the first factor that is required to be proven beyond a reasonable doubt, counsel has to show the defendant intentionally participated in some meaningful way in the offense, either by counseling, hiring or otherwise procuring, assisting in the commission of the crime; for instance, by agreeing to stand by or near the scene to render aid or assistance, encouragement, if such became necessary, or to assist the perpetrator of the crime in making an escape from the scene.

"The Commonwealth is not required under this theory of joint venture to show that the defendant physically participated in the actual shooting of the victim, but it must show that the defendant somehow participated in the venture to the extent that he sought to make it succeed, to make it happen. If one by agreement [is] in a position to render aid, he was an abettor, even if he did not participate in the actual perpetration of the crime, because his presence may have encouraged the perpetrator by giving the other individual hope of immediate assistance.

"Mere knowledge, however, that a crime is to be committed is not sufficient under our law to make out a joint venture. . . . The evidence must show more than mere association with the perpetrator of the crime, either before or after its commission.

"The Commonwealth must show more than mere presence at the scene, even when coupled with knowledge of the planned act. So mere presence, even with knowledge of the planned act, is not sufficient. The Commonwealth must show active participation by two or more individuals with the same mental state or specific intent to commit those crimes. There must be evidence of some — of some actual, active participation and assistance by one individual in the perpetration of the crime with the other individual."