## Commonwealth *vs.* Edker Rock.

Suffolk. March 2, 1999. - May 26, 1999.

Present: Wilkins, C.J., Abrams, Lynch, Fried, & Ireland, JJ.

*Constitutional Law,* Search and seizure. *Search and Seizure,* Threshold police inquiry. *Jury and Jurors. Practice, Criminal,* Deliberation of jury, Jury and jurors, Comment by prosecutor, Instructions to jury, Capital case. *Joint Enterprise. Witness,* Credibility. *Evidence,* Relevancy and materiality, Fingerprints. *Homicide. Malice. Words,* "Seizure."

Police officers' conduct in approaching in an unmarked cruiser two men running along a street, stopping when the men stopped, leaving the cruiser, and requesting to speak with the men did not constitute a seizure of the men, where reasonable persons would have believed at that time that they were free to leave [611-612], and an officer's patfrisk of the defendant was supported by the officer's reasonable belief, based on specific and articulable facts, that the defendant was armed and potentially dangerous [612-613].

At the trial of a murder indictment, the judge did not abuse his discretion in dismissing a juror who he believed was using drugs during the course of the trial. [613-614]

At a murder trial, there was nothing improper in the prosecutor's opening statement regarding what she expected to prove at trial [614]; further, any error in the prosecutor's calling the victim's sister to testify, to assertedly "humanize" the proceedings, did not, in the circumstances, warrant a new trial [615]; and the prosecutor's improper appeal to sympathy in closing argument did not, in the context of the case as a whole, constitute prejudicial error [615-617].

At a murder trial, the judge's correct instruction on premeditation, and the jury's verdict of murder in the first degree by reason of deliberate premeditation, rendered inconsequential the judge's reference in the instruction to the third prong of malice [617]; the judge correctly instructed the jury on joint venture liability [617-618]; and the judge properly refused to give a requested cautionary instruction on fingerprints where there was sufficient circumstantial evidence to warrant an inference that the defendant's palm print was placed on the getaway vehicle during or immediately after the commission of the crime [618].

Indictments found and returned in the Superior Court Department on August 10, 1994.

Pretrial motions to suppress evidence were heard by *Sandra*

*L. Hamlin,* J., and the cases were tried before *Robert W. Banks,* J.

*Frances L. Robinson* for the defendant.

*Joseph M. Makalusky,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J. The defendant, Edker Rock, appeals from his convictions of murder in the first degree and unlawful possession of a firearm.[1] G. L. c. 265, § 1. G. L. c. 269, § 10 (*a*). We affirm the convictions. We decline to exercise our power under G. L. c. 278, § 33E, in favor of the defendant on the conviction of murder in the first degree.

On the night of the murder, two police officers were covertly observing a street corner in anticipation of drug sales. The officers saw a man, later identified as the codefendant Jeffrey Jones, approach the street corner. The officers heard a gunshot and saw that a man was felled. The codefendant fled to a vehicle, which was standing with the engine running, passenger door open, lights off, and a driver inside. The vehicle sped away. A witness saw the vehicle and the registration plate and gave the information to the police. The officers relayed the information about the shooting over the radio.

The night of the shooting, other police officers were in the area, including two plainclothes officers patrolling in an unmarked vehicle. The officers heard radio calls about the shooting and, within ten minutes of the shooting, saw two males, the defendant and the codefendant, running. The officers followed in the unmarked cruiser, caught up to the men and asked, "Guys, can I talk to you for a second?" The officers got out of their vehicle. The men appeared nervous and one of the officers saw a bulge under the defendant's shirt. A patfrisk was conducted, a gun was recovered, and the two were arrested. One of the officers who had been observing the corner at the time of the shooting arrived and identified the codefendant as the shooter. At the time of arrest, the defendant made several inculpatory statements.

The defendant moved to suppress certain evidence based on a claim that the police unlawfully stopped him and conducted an

---

[1]The defendant raises no claim of error related to his conviction of unlawful possession of a firearm.

unnecessarily suggestive identification.[2] The motion was denied. After a jury trial, the defendant was convicted of murder on a theory of deliberate premeditation. The Commonwealth's theory was that the defendant was engaged in a joint venture. He now appeals.[3]

1. *Stop of the suspects.* The defendant contends that the motion judge erred in denying the motion to suppress. According to the defendant, the officers effectuated a seizure by pursuing the defendants in the police cruiser, and that seizure was not founded on reasonable suspicion. We disagree.

"[A] pursuit, which, objectively considered, indicates to a person that he would not be free to leave the area (or to remain there) without first responding to a police officer's inquiry, is the functional equivalent of a seizure, in the sense that the person being pursued is plainly the object of an official assertion of authority, which does not intend to be denied, and which infringes considerably on the person's freedom of action." *Commonwealth* v. *Stoute*, 422 Mass. 782, 789 (1996). However, "not every encounter between a law enforcement official and a member of the public constitutes an intrusion of constitutional dimensions requiring justification." *Id.* Rather, a person is "seized," "if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.* at 786, quoting *Commonwealth* v. *Borges*, 395 Mass. 788, 791 (1985).

The motion judge found the following. The officers were driving an unmarked cruiser when they turned to follow the defendants. They did not activate the cruiser's blue lights or sirens. The officers followed the defendants for 150 feet until the defendants voluntarily stopped running. One officer left the cruiser, identified himself, and said, "Guys, can I talk to you for a second?" One officer stepped between the two defendants.

We conclude that this pursuit did not rise to a seizure because a reasonable person would have believed he was free to leave at the time the officers followed the defendants and at the time the

---

[2]The defendant was indicted for murder in the first degree, receiving a stolen motor vehicle, unlawful possession of a firearm, receiving stolen goods, possession of burglarious tools, unlawfully attaching motor vehicle plates, and unlawful possession of ammunition. The last four charges were dismissed.

[3]The defendant and the codefendant were tried together. The defendant was acquitted of the charge of receiving a stolen motor vehicle. The codefendant was acquitted of all charges.

defendants stopped to talk to the officers. See *Stoute, supra.* Approaching in an unmarked cruiser, leaving the cruiser, and requesting to speak with a citizen, without more, does not constitute a seizure. See *id.* at 789 (court assumed no seizure where officer said, "hold up a minute"); *Commonwealth* v. *Williams,* 422 Mass. 111, 116-117 (1996) (no seizure where police followed running defendant in their cruiser as police conduct would not have communicated to the reasonable person an attempt to capture or otherwise intrude on the defendant's freedom of movement); *Commonwealth* v. *Thinh Van Cao,* 419 Mass. 383, 388, cert. denied, 515 U.S. 1146 (1995) (no seizure where officer approached and asked questions about identity in unconfined public space, and did not indicate that subjects could not terminate encounter).

We disagree with the defendant's contention that "pursuit here began when [the officers] turned their cruiser the wrong way up a one way street with the stated intention of stopping the two [defendants]." See *Williams, supra.* The fact that the officers turned the wrong way does not necessitate a conclusion that a reasonable person would feel he was not free to leave. See *Commonwealth* v. *Wedderburn,* 36 Mass. App. Ct. 558, 559-561 (1994) (no pursuit where officer drove unmarked cruiser across opposing traffic lane at forty-five degree angle at normal pace). Further, the officers' intent to stop the defendants, absent any outward manifestation of that intent, is not relevant to whether a reasonable person would feel he was free to leave.

We turn to the seizure of the weapon and the subsequent arrest. At some point after the officers left the cruiser, one of the officers patted the defendant down and removed a gun from his clothing. The defendant correctly asserts that the officer effectuated a search when he performed the patfrisk. However, the defendant is incorrect when he claims that this search was improper.

A patfrisk must be supported by a reasonable belief, based on specific and articulable facts, that the defendant was armed and potentially dangerous. See *Commonwealth* v. *Wing Ng,* 420 Mass. 236, 237-239 (1995). The judge found that when the officers left the cruiser, they observed that the defendants were sweating, nervous, breathing heavily, and looking at each other and in all directions. The defendant kept moving so as not to allow the officers to see his right side. One of the officers saw a pronounced bulge protruding under the defendant's shirt in the

rear right hip area. The officer knew that a shooting had just occurred in the vicinity, that weapons were often concealed in the hip area, and that they had seen the defendants at approximately 11 P.M., running in a high crime area. These facts objectively supported a reasonable belief that the defendant was armed and thus potentially dangerous. See *id.* Thus, the patfrisk was warranted and the evidence gathered subsequent to the search was properly admitted.[4]

2. *Juror dismissal.* On the fifth day of trial and before deliberations, the judge informed counsel that a matter had come to his attention during recess and that he was going to inquire of one of the jurors outside the presence of the jury. In response to questions, the juror stated that he had met an acquaintance on a bus and told the acquaintance he was a juror. The juror denied having told the acquaintance that he smoked marijuana in order to stay awake during the proceedings. The judge then questioned the victim's sister. She stated that she was riding an MBTA train on the previous Friday and that she heard the juror say that he had to smoke marijuana in order to stay awake at trial. Over defense counsel's objection, the judge dismissed the juror.

The defendant contends that the judge's decision to dismiss the juror requires reversal because "there was no legitimate basis for the Court's action."[5] According to the defendant, there was no showing in the record that the juror was unable to perform his duty as a juror, *Commonwealth* v. *Connor,* 392 Mass. 838, 847 (1984), and the allegation of the victim's sister was insufficient to justify the judge's decision. The defendant, noting that the juror was the only young black male on the jury, asserts that the dismissal caused a "real and unique" loss which denied the defendant his right to a jury of his choosing.

"The court shall have the discretionary authority to dismiss a juror at any time in the best interests of justice." G. L. c. 234A, § 39. In making his ruling, the judge implicitly accepted the testimony of the witness and rejected the testimony of the juror,

---

[4]The officer reached for the bulge, felt the outline of a firearm, yelled to his partner that the defendant had a gun, and removed the weapon. The defendant and the codefendant were arrested.

[5]Another juror was dismissed a day later and the case was submitted to a jury of less than twelve. However, the defendant waived his right to be tried by a jury of twelve, and does not challenge that on appeal.

stating "what [the juror] has denied and the other [person] has testified to causes me concern."

Both the Commonwealth and the defendant are entitled to a sober, conscious jury. See *Commonwealth* v. *Keaton*, 36 Mass. App. Ct. 81, 87 (1994) (acknowledging that right to fair trial is placed in jeopardy if juror sleeps through testimony and noting that it is incumbent on judge to ensure that all jurors hear evidence). Where a judge has seen and heard a witness, the judge determines credibility. If a judge, after evaluating credibility, believes testimony that a juror is using drugs during the course of a trial, the judge has discretion to remove that juror.

3. *Prejudice from impermissible statements.* According to the defendant, the prosecutor improperly injected sympathy into the trial. The defendant cites several alleged prejudicial errors including appeals to sympathy in the prosecutor's opening statement, the testimony of the victim's sister, and appeals to sympathy in the prosecutor's summation. The defendant objected to each alleged error.[6]

Before determining whether prejudicial error exists, we must first ask whether an error occurred at all. During opening statement, the prosecutor described the fact that the victim and his sister had talked the night of the shooting, and that the two had planned to celebrate the sister's birthday, which was the day after the shooting. The prosecutor stated that the victim was prevented from doing so because "two men had other plans" for the victim that night. The defendant objected.

We conclude that there was nothing improper about this statement. The prosecutor was "free to state in [her] opening anything that [she] expects to be able to prove by evidence." *Commonwealth* v. *Hartford*, 346 Mass. 482, 486 (1963), quoting *Commonwealth* v. *Clark*, 292 Mass. 409, 410 (1935). Indeed, the prosecutor did attempt to elicit testimony about the victim and his sister's plans. However, the judge sustained the defendant's objection and precluded the line of questioning. There was no error. *Id.*

---

[6]The defendant also describes how, during the prosecutor's summation, the mother of the victim collapsed, cried, and said that her baby had been murdered. After she was removed, the judge instructed that this was an emotional case but that the jurors were to "put that outside of [their] minds." The defendant does not argue that the outburst was prejudicial. Rather, he appears to raise the outburst in order to argue that the subsequent instruction was insufficient to cure the prosecutor's pleas for sympathy.

The defendant next complains that the victim's sister was allowed to testify, even though the victim had already been identified by three other witnesses and the sister had no other relevant information.[7] We stress that "there is no error where a member of the victim's family likely to elicit sympathy testifies as to some relevant issue, even a relatively peripheral one and even where another witness could have given the same information without evoking the same level of sympathy from the jury." *Commonwealth* v. *Santiago*, 425 Mass. 491, 496-497 (1997), *S.C.*, 427 Mass. 298 (1998). Here, in view of the fact that several witnesses identified the victim prior to the sister's testimony, we doubt the value of the sister's identification testimony. The Commonwealth suggests that the evidence as to what the victim did was relevant to "humanize" the proceedings. *Id.* at 495. While the prosecutor may, in opening statement or summation, "tell the jury something of the person whose life ha[s] been lost in order to humanize the proceedings," the testimony of a relative may not be elicited for the sole purpose of creating sympathy. *Id.* The witness must testify to something relevant. See *id.* We conclude, however, that any error in calling the sister does not warrant a new trial.[8] The witness's testimony was brief. She stated that her birthday was the day after the shooting, that she saw her brother at a store before the shooting, and that she went to the crime scene and the hospital after the shooting. She also testified that she identified the victim. Contrast *Santiago, supra* at 496 (witness testified about victim's personal relationships, pregnancy, schooling, job, and recent birthday celebration).

The defendant also complains that the prosecutor appealed to sympathy during summation, when she stated that the victim was unable to testify because "he's dead. . . . Twenty-one years old, standing on a street corner chatting . . . . And although [the victim] never set foot in this courtroom . . . he spoke to you during this trial. . . . That's what is important in this case." Again, the defendant objected. The Commonwealth

---

[7]Prior to trial, the defendant made a motion in limine to prevent family members of the victim from testifying. The judge reserved action on the motion, and the defendant renewed the motion when two family members cried out during another witness's testimony. On the fifth day of trial, the Commonwealth called the victim's sister. Defense counsel objected, but the victim's sister was allowed to take the stand.

[8]We note that *Commonwealth* v. *Santiago*, 425 Mass. 491 (1997), *S.C.*, 427 Mass. 298 (1998), was decided after the trial in this case.

concedes, and we agree, that this statement may have been "excessive."

Because the defendant objected, we consider whether, "in the context of the entire argument and the case as a whole," the summation constituted "prejudicial error." *Id.* at 500, citing *Commonwealth* v. *Loguidice*, 420 Mass. 453, 454 (1995); *Commonwealth* v. *Daggett*, 416 Mass. 347, 352 n.5 (1993); *Commonwealth* v. *Smith*, 387 Mass. 900, 912 (1983). We note at the outset that "closing argument is identified as argument, the jury understands that, instructions from the judge inform the jury that closing argument is not evidence, and instructions may mitigate any prejudice in the final argument. . . . A certain measure of jury sophistication in sorting out excessive claims on both sides fairly may be assumed." *Commonwealth* v. *Kozec*, 399 Mass. 514, 517 (1987). See *Commonwealth* v. *Wilson*, 427 Mass. 336, 350 (1998); *Commonwealth* v. *Sanna*, 424 Mass. 92, 107 (1996).

Applying the factors set forth in *Santiago*, we conclude that a new trial is not warranted.[9] First, the judge issued clear instructions, twice telling the jurors that they were to put emotion aside.[10] See *Commonwealth* v. *Kent K.*, 427 Mass. 754, 761 & n.7 (1998); *Santiago, supra* at 500. Second, and perhaps more significantly, the jurors exhibited an ability to examine the law and the facts without regard to the emotional pleas, in compliance with the judge's instruction. *Id.* The jury acquitted the defendant of one charge and acquitted the codefendant altogether. See *Commonwealth* v. *Gordon*, 422 Mass. 816, 831 (1996). Thus, the verdict itself is strong evidence that the jurors were not swayed by emotion and shows that the jurors were able to sort out the "excessive" argument. See *Kozec, supra* at 517. Finally, the case against the defendant was quite strong.[11] After balancing these factors "in the context of the entire argu-

[9]While *Commonwealth* v. *Santiago, supra*, was decided after the trial in this case, the factors to be considered were all set forth in cases before this trial.

[10]After a family member's outburst, the judge instructed that, although people may get emotional, the jurors were to "put that outside of [their] mind[s] and . . . do what [they] are here for under a controlled approach." The judge later instructed that the jurors were to decide the case "without prejudice, without fear and without favor, putting aside any emotional dimensions that might be attached to this case."

[11]The defendant was caught running with the murder weapon in close physical and temporal proximity to the crime scene. The defendant was identified as being in the area earlier that evening. The defendant's palm prints were

ments [and testimony] and the case as a whole," we conclude that "the prosecutor's improper statements [did not] 'constitute[] prejudicial error.' " *Commonwealth* v. *Wilson*, 427 Mass. 336, 351 (1998), quoting *Santiago, supra* at 500.

4. *Jury instructions.* The defendant argues that the judge made several errors in instructing the jury. The defendant objected to these instructions. According to the defendant, the judge erred by instructing the jury on the third prong of malice, as the Commonwealth's case was predicated on a theory of deliberate premeditation. Thus, the defendant contends, a new trial is warranted.

We disagree. The Commonwealth presented evidence that the defendant was a joint venturer in a deliberately premeditated murder. "The correct instruction on premeditation and the [verdict of murder in the first degree] by reason of deliberate premeditation, renders inconsequential the reference in the [jury] instruction to the third prong of malice." *Commonwealth* v. *Hamilton*, 426 Mass. 67, 75 (1997).

The defendant next argues that the judge erred in the instructions related to joint venture liability. The judge instructed that the Commonwealth must "prove that the defendant was present at the scene of the crime." He then defined that as "physically present at or near the scene of the crime." Counsel objected, arguing that the jury could return a verdict of guilty, based on that instruction, if he received the gun away from the scene of the crime and was not present at the corner where the victim was shot.[12] As the defendant was not convicted of receiving a stolen motor vehicle, the defendant contends that the jury must have determined that the defendant was not driving the getaway vehicle and that he was not present at the scene of the crime. Thus, the defendant concludes, there is a strong probability that he was convicted on a legally insufficient theory of joint venture liability. See *Commonwealth* v. *Ortiz*, 424 Mass. 853, 856 (1997) (to convict as joint venturer where defendant not present at

found on the roof and door of the getaway vehicle. The defendant admitted to possessing the murder weapon when he spoke with police officers earlier on the night of the murder, and he admitted being in the area. The defendant shouted "f--- them Humboldt [Street, the place of the shootings] 'bitches. They killed my cousin." He also shouted to his codefendant, "Hey, Jeff, he's R.P. [rest in peace]."

[12]According to the defendant, the judge should have instructed that the defendant could not be convicted unless he was "present at the shooting of the victim."

scene of crime, Commonwealth must produce evidence that defendant was accessory before the fact).

We disagree. The instruction that the defendant had to be "physically present at or near the scene of the crime" substantially comports with language we deemed "exemplary" in *Commonwealth* v. *Echavarria*, 428 Mass. 593, 598-599 n.3 (1998) ("agreeing to stand by or near the scene to render aid or assistance, [or] encouragement"). The instruction properly defined joint venture liability. See *Commonwealth* v. *DiBenedetto*, 427 Mass. 414, 422 (1998) ("guilt as a joint venturer required the defendant's presence at or near the scene").[13]

Finally, the defendant attacks the judge's refusal to give an instruction on fingerprints, after evidence was admitted which showed that the defendant's palm print was found on the getaway vehicle. He asserts that his right to a fair trial necessitated an instruction that his palm print on a motor vehicle found in the general area where the defendant was on that night could not be used as the sole evidence to convict him, absent evidence that the print was made at the time of the commission of the crime. We disagree.

The circumstantial evidence at trial was sufficient to support an inference that the defendant's palm print was placed on the vehicle during or immediately after the commission of the crime.[14] Further, there was no evidence that the defendant had touched the vehicle at any other time. Thus, "[t]he trial judge properly exercised his discretion in declining to give the requested instruction." *Commonwealth* v. *Wills*, 398 Mass. 768, 779 (1986). See *Commonwealth* v. *LaCorte*, 373 Mass. 700, 702 n.1 (1977) ("because of other circumstantial evidence in this case, the judge might well have ruled that the defendant was not entitled to such an instruction").

---

[13]The fact that the defendant was not convicted of receiving a stolen motor vehicle is not conclusive on the issue whether the defendant was the driver of the vehicle used for getaway purposes. For example, the jurors could have concluded that the defendant did not know the vehicle was stolen or that he was the thief.

[14]The codefendant, identified as the shooter, was seen getting into the vehicle, a Mazda, immediately after the shooting. The vehicle, driven by someone, sped off. The defendant was found with the codefendant minutes later, running, within several blocks of the shooting. The vehicle was found nearby with the engine still warm. The palm print was consistent with a driver getting in and out of a vehicle. The defendant was carrying the murder weapon and a Mazda key.

5. *Relief pursuant to G. L. c. 278, § 33E.* After full consideration of the law and the evidence, we decline to exercise our power under G. L. c. 278, § 33E, in favor of the defendant. The convictions are affirmed.

*So ordered.*