## COMMONWEALTH vs. NICOLE YESHULAS.

No. 99-P-690.

Suffolk. November 10, 2000. - May 8, 2001.

Present: ARMSTRONG, C.J., PERRETTA, & BECK, JJ.

*Evidence,* Relevancy and materiality. *Practice, Criminal,* Argument by prosecutor, Voir dire, Sentence, Restitution.

At the trial of indictments charging the defendant with aiding in or counseling the burning of a dwelling house and arson causing injury to a firefighter, testimony elicited by the prosecutor from the victim's brother was proper both as relevant to establishing that the building burned was a dwelling house and in order to provide a foundation for the admission of the victim's hospital records (which were relevant to establish the time the fire was set), and, further, the testimony was not introduced to invoke sympathy. [488-489]

At the trial of indictments arising from the burning of a dwelling house, unobjected-to statements by the prosecutor in closing argument did not constitute an improper appeal for sympathy, but were addressed to the defendant's state of mind, which was relevant to establishing that the defendant acted wilfully and maliciously. [489]

At a criminal trial, the judge did not abuse his discretion in declining to conduct a voir dire of the jury to determine whether they were aware of publicity involving one of the defendant's witnesses, where the witness's testimony was not crucial to the defendant's case, the subject of the publicity bore no substantive relation to the defendant's trial, and the judge clearly instructed the jury that they should avoid any exposure to publicity. [489-492]

Although sentencing proceedings in an arson case, in which the defendant was ordered to pay the victim restitution, did not strictly comply with the Supreme Judicial Court's decision in *Commonwealth* v. *Nawn*, 394 Mass. 1 (1985), the process was not fundamentally unfair. [492-493]

In sentencing proceedings in an arson case, in which the judge ordered the defendant to pay the victim restitution, the Department of Probation had discretion to consider the defendant's financial resources in setting the restitution payment schedule. [493]

INDICTMENT found and returned in the Superior Court Department on July 22, 1997.

The case was tried before *Patrick F. Brady*, J., and a motion for a new trial was heard by him.

*Murray A. Kohn* for the defendant.

*Joseph M. Ditkoff*, Assistant District Attorney, for the Commonwealth.

BECK, J. A Suffolk Superior Court jury convicted the defendant of aiding in or counseling the burning of a dwelling house, G. L. c. 266, § 1, and arson causing injury to a firefighter, G. L. c. 265, § 13D$^{1}/_{2}$. (She was found not guilty of breaking and entering with intent to commit a felony.) On appeal, she claims that the following errors infected her trial: the prosecutor unfairly introduced the testimony of a victim's brother and made improper remarks in her closing argument; the judge abused his discretion in refusing to conduct a voir dire of the jury to determine whether they were aware of publicity involving one of the defendant's witnesses; and the restitution proceedings were flawed. We affirm.

1. *Facts.* There is no dispute that, on the evening of May 21, 1997, someone set fire to the first floor apartment at 39 Middle Street in the South Boston area of Boston where Daniel Duggan and his son Tim lived. The fire alarm went off at 7:55 P.M.; within three minutes, firefighters began appearing at the scene. In total, about thirty-five individuals were involved in fighting the fire. The fire had burned for twenty to thirty minutes before the firefighters received and responded to the alarm. It was quickly extinguished, but one of the firefighters was injured when the kitchen ceiling collapsed on him.

The issue at trial was whether the defendant was among those who set the fire. The Commonwealth's case relied heavily on the testimony of Cory Faith, a fifteen year old who admitted that she was among the group of teenagers who set the fire. In exchange for her testimony and a plea of delinquent to breaking and entering, the Commonwealth agreed to dismiss the arson and injury to a firefighter charges against her.

As to the charges of which the defendant was convicted, Faith supplied the following evidence. The defendant threw a lighted cigarette into a trash barrel in the hall of the Duggans' apartment, pulled a burning T-shirt from the trash barrel, and then dropped the T-shirt back into the barrel. The defendant also wrote her name and that of another participant and the words "was here with porch power" on the Duggans' porch. As the

group left the Duggans' home, Faith told the other participants she felt bad for the Duggans. The defendant responded that she "didn't care, he [meaning Tim Duggan] deserved it."

An adult witness testified that, at about 7:45 P.M., she heard sirens and saw several young people, who appeared to be frightened, running away from Middle Street. The defendant, who was nearly eighteen, was among them. Minutes later the witness saw the same group at the Andrews "MBTA" station. When the adult witness asked one of the group why she seemed frightened, one of the young people, possibly the defendant, warned the person to whom the question was put, "Don't say effing [*sic*] anything." Another adult witness testified that she saw a group of teenagers running away from 39 Middle Street, but could not identify any of them.

The defendant claimed alibi. She called a number of witnesses who testified as to her whereabouts on the day in question. Defense counsel's law partner testified that the defendant was working on the office computer until about 6:15 P.M. Another witness testified that the defendant was in his apartment showering between 6:30 and 6:55 P.M. A close friend testified that the defendant was with her between 6:55 and 7:55 P.M., assisting in a search for a pair of shoes to borrow. Lois Lampron, who was dating the defendant's father, testified that the defendant came by her apartment, not far from the scene of the fire, at about 7:45 P.M., looking for Lampron's daughter, who was not home. According to the defendant, she went to the Andrews MBTA station in response to a telephone call from one of the participants who set the fire.

2. *Prosecutorial excesses.* a. *Testimony of Robert Duggan.* The prosecution called Daniel Duggan's brother Robert. Robert testified that when he arrived at 39 Middle Street, Daniel was sitting on the stairs across from the house and seemed to be having trouble breathing, apparently from the smoke. An ambulance took Daniel to the hospital; Robert picked him up the next day. Robert also testified that Daniel had lived at 39 Middle Street for ten to fourteen years and that it was a two-family house.

The defendant claims that this evidence, to which she did not object at trial, was irrelevant and designed only to create

sympathy for Daniel. There is no merit to this argument. Family members may testify about relevant issues so long a such testimony is not elicited solely to create sympathy. *Commonwealth* v. *Rock*, 429 Mass. 609, 615 (1999). As the Commonwealth points out, the evidence was relevant to establish that 39 Middle Street was a dwelling, an element of the arson charge. See G. L. c. 266, § 1. The testimony also provided a foundation for the admission of Daniel's hospital records, which in turn were relevant to establishing the time the fire was started. See *Commonwealth* v. *Rock, supra.* Moreover, the testimony was relatively brief and factual and does not appear to us to have been introduced to evoke sympathy or to have had that effect. *Commonwealth* v. *Santiago*, 425 Mass. 491 (1997), on which the defendant relies, is not on point. In that case, the testimony of the deceased victim's sister concerned issues about the victim's life that were not relevant and were particularly damaging because the victim was not the intended target of the shooting. *Id.* at 493, 497. There was no error.

b. *Closing argument.* In her closing argument, the prosecutor argued to the jury that the defendant "didn't care who was inside . . . . She didn't care who got hurt. She didn't care about the destruction." Although there was no objection at trial, the defendant claims this argument was also an improper appeal to sympathy. We disagree. The argument was a reasonable inference from the evidence that the defendant put the burning T-shirt back in the barrel and said she did not care about the occupants of the apartment. It was addressed to the state of mind of the defendant, which was relevant to establishing that the defendant acted wilfully and maliciously as the arson statute requires. See *Commonwealth* v. *Martinez*, 431 Mass. 168, 182 (2000); G. L. c. 266, § 1. This was not an appeal for sympathy; such efforts tend to focus on the injury or death of the victim. These remarks focused on the defendant. In any event, this argument did not, as the defendant contends, go the heart of her defense, i.e., that she was not there.

3. *Failure to conduct voir dire.* Evidently sometime after 10:30 A.M. on February 18, 1998 when she completed her testimony for the defense in this case, Lois Lampron was involved in an eviction proceeding in the Housing Court, prob-

ably in the same courthouse. Lampron and her family were apparently being evicted from the Old Colony Housing Project in South Boston where she had lived for twenty-two years. According to the defendant, Lampron "scream[ed] at the judge and [made] a big spectacle of herself," conduct the defendant claims was broadcast on the eleven o'clock news that night and reported in the Boston Herald newspaper the next morning. Defense counsel brought this situation to the trial judge's attention two hours after the jury had resumed their deliberations the next morning. Trial counsel expressed his concern about whether the publicity concerning Lampron's conduct at the Housing Court had the effect of impeaching her trial testimony. Although trial counsel did not explicitly request a voir dire of the jury, the judge "decline[d] to interview the jurors." The judge expressed concern that questioning the jury "might even invoke . . . thoughts that are unpredictable." The defendant claims that the judge's decision was an abuse of discretion and warrants a new trial. See *Commonwealth* v. *Federici*, 427 Mass. 740, 746 (1998). We disagree.

Although the judge marked the newspaper article for identification, neither it nor a video tape of the broadcast has been included in the record. We obtained a copy of the newspaper article from the Superior Court and have read it. See Mass.R.A.P. 18(a), as amended, 378 Mass. 940 (1979). Lampron herself is not presented in an unfavorable light. Moreover, the article does not include her picture.

The judge accepted defense counsel's report of the defendant's statement that she had seen Lampron on the newscast yelling at the Housing Court judge. If, despite the probably fatal absence of a video tape, we assume that Lampron was recognizable in the broadcast and that she was cast in an unfavorable light, the defendant's argument would nonetheless fail because Lampron's testimony was not crucial to the defendant's case. Her testimony, that she had a conversation with the defendant in the same neighborhood as the Duggans' apartment fifteen minutes after the time the investigators established as the start of the fire, even if believed, did not establish an alibi. Moreover, the Housing Court matter bore no substantive relation to the defendant's trial. See *Commonwealth* v. *Hanscomb*, 367 Mass.

726, 728-729 (1975). These factors alone are sufficient to establish that the trial judge did not abuse his discretion in refusing to question the jurors.

Even if Lampon's testimony had been of significance to the defense, the judge's instructions would have offset any negative effect from the broadcast. The judge clearly and forcefully instructed the jury that they should avoid any exposure to publicity. See *Commonwealth* v. *O'Toole*, 15 Mass. App. Ct. 927, 928 (1983).

On the first day of trial, before opening statements, the judge warned the jury that there might be publicity about the case. He told them, "Your duty is to avoid [publicity]." He further advised:

> "If anything comes to your attention about the case outside of court your duty is to tell the [court] officer(s) about it. They can bring it to my attention. We usually then have a little bit of a private interview with counsel. You can tell me what the situation involved and I have to make a decision as to whether it is appropriate for you to continue as a juror, so avoid it, police yourselves. Do not allow yourselves to be exposed to any publicity."

At the end of the first day, the judge again admonished the jury that "if there is an[y] publicity about the case make sure that you do not allow yourselves to be exposed to it."

At the end of the second day of trial, the judge "repeat[ed] the admonitions, . . . [including the following:] if there is any publicity, make sure you police yourselves. Don't allow yourselves to be exposed to it." Finally, after closing arguments (and before the newscast coverage that evening), the judge instructed the jury as follows:

> "[A]nything that you heard outside of court having anything remotely to do with the case is not evidence. Ignore it, it should play no role in your decision and it would be grossly unfair if any of you were to take into account something you heard about the case or the general type of case outside of court in reaching your decision."

The judge was entitled to assume that the jury followed his

instructions. See *Commonwealth* v. *Degro*, 432 Mass. 319, 328 (2000). He did not abuse his discretion in declining to question the jurors.

4. *The restitution order.* At a hearing five days after the end of the trial, the judge sentenced the defendant to a State prison term to be followed by three years of probation, with "a special condition of probation that [the defendant] make restitution to Tim and Daniel Duggan in the amount of $2,500 [with] [t]he terms of repayment to be set by the probation officer in his or her discretion." The judge arrived at that figure in the following manner. The Commonwealth asked for restitution of $5,000 based on the trial testimony of the fire chief about the value of the Duggans' personal property, clothing, stereo equipment, furniture and household items destroyed in the fire. The judge then asked the prosecutor about the accuracy of the fire department estimate. She responded, "They say it is pretty accurate but it is hard to be precise about it." In asking defense counsel for his sentencing recommendation, the judge asked, "What restitution are you suggesting is reasonable?" Defense counsel said the amount of restitution should be based on the defendant's job, "somewhere in the range of $2,000," paid over the course of her probation. The judge rejected both recommendations and ordered restitution of $2,500. There was no objection to the conduct of the hearing or the amount of restitution.

Relying on *Commonwealth* v. *Nawn*, 394 Mass. 1 (1985), the defendant argues on appeal that the hearing was fundamentally unfair. She claims there should have been an evidentiary hearing as to the value of the lost property with an opportunity for cross-examination. She also claims that the judge should have considered her financial circumstances in setting the amount of restitution.

*Nawn* is readily distinguishable. First, in that case defense counsel objected to the restitution order. *Id.* at 6. Here, not only did the defendant not object or request an evidentiary hearing, she made her own recommendation for an amount. Second, in *Nawn* it was the victim who estimated the amount of her own loss. *Ibid.* Here it was the fire department, which had no personal stake in the amount. Moreover, "the defendant and [her] lawyer [did] participate in the restitution decision." *Id.* at

7. The restitution the judge ordered was one-half of what the Commonwealth had asked for and only twenty-five percent more than the defendant suggested. Even though the hearing did not strictly comply with *Nawn*, the process was not fundamentally unfair. See *Commonwealth* v. *Casserly*, 23 Mass. App. Ct. 947, 947 (1986). (We reject as without merit the Commonwealth's argument that the defendant had an opportunity to cross-examine the fire chief at the trial. A defendant, especially one whose defense is alibi, should not be expected to try issues of restitution during the trial on the merits.)

Finally, contrary to the defendant's argument, the probation department does have discretion to "consider the defendant's financial resources in setting the [restitution] payment schedule." The order as entered on the docket reads as follows: "Restitution in the amount of $2,500 payable at a rate to be determined by [the] Probation [Department]."

*Judgments affirmed.*