COMMONWEALTH vs. JOSE ANTONIO RIVERA.

No. 91-P-1299.

Middlesex. May 18, 1992. - September 21, 1992.

Present: WARNER, C.J., KASS, & LAURENCE, JJ.

*Search and Seizure*, Threshold police inquiry, Protective frisk. *Constitutional Law*, Search and seizure.

Circumstances attending the frisk of a passenger in an automobile stopped by a State trooper for speeding, including findings by a judge that the trooper observed an aluminum baseball bat sticking out from under the front seat; that there were four men in the vehicle, while the trooper was alone; that there was no other sporting equipment visible in the vehicle; that the trooper was aware of a recent fatal bludgeoning of a police officer with an aluminum baseball bat while the officer had been making an apparently routine traffic stop; and that the passenger frisked had access to the bat and had acted suspiciously at the time the trooper stopped the vehicle, were sufficient to warrant belief that the trooper's fear for his safety was objectively reasonable and, therefore, the pat frisk of the passenger outside the vehicle was constitutionally permissible; consequently, heroin found in the passenger's jacket was not the fruit of an unlawful search and was not subject to being suppressed. [314-315]

INDICTMENT found and returned in the Superior Court Department on May 24, 1990.

A pretrial motion to suppress evidence was heard by *John P. Forte*, J., sitting under statutory authority, and the case was tried before him.

*Kevin S. Nixon* (*Jeanne L. Carol* with him) for the defendant.

*Jennifer Petersen*, Special Assistant District Attorney, for the Commonwealth.

KASS, J. Very aptly, the defendant has identified the question to be decided as whether a State trooper's claimed concern for his safety was objectively reasonable in light of the whole picture at the time he frisk-searched the defendant.

See *United States* v. *Cortez*, 449 U.S. 411, 417 (1981); *Commonwealth* v. *Fraser*, 410 Mass. 541, 545 (1991). That pat frisk led to the discovery of some 804 packets of heroin (46.3 grams) and a buck knife. The defendant Rivera appeals from a denial of his motion to suppress the evidence seized in the warrantless search. After trial, a jury returned a verdict of guilty on the charged offense of trafficking in more than twenty-eight (but less than 100) grams of heroin. In ruling on the motion to suppress, the trial judge made findings of fact which are binding upon us unless clearly erroneous. *Commonwealth* v. *Colon-Cruz*, 408 Mass. 533, 538 (1990).

We state those facts, sometimes supplemented by uncontested testimony at the suppression hearing, in some detail because nuance and atmospherics are important in deciding cases of this kind.

On May 1, 1990, at 11:20 A.M., John F. Cahill, a State trooper, while patrolling Route 290 in Marlborough, observed a gray Chrysler automobile speeding in the middle eastbound lane. He also noticed that the rear license plate was not fully secured to the car. Trooper Cahill followed the car for about a mile to verify its speed, which he clocked at 70-72 m.p.h. When Trooper Cahill turned on his blue flashing lights to pull the car over to the side of the road, Rivera, a passenger, looked back at the police cruiser. As the driver pulled the car quickly over to the side of the road, the trooper observed Rivera bending forward, as if he were putting something on the floor.

Trooper Cahill approached the stopped car from the rear. There were two men in the back seat, each with his hands in his lap, and two in the front seat. The police officer asked the driver for his license and registration. The driver produced a registration which matched the license plate, but told the trooper that he did not have his operator's license with him. Thereupon, Trooper Cahill asked the driver to step out of the car so that he could question him further.[1] As soon as they

---

[1]Contrast *Commonwealth* v. *King*, 389 Mass. 233 (1983), in which the initial stop was investigatory, and the driver's papers were in order.

were out of earshot of the other occupants of the car, Trooper Cahill asked the driver his name and other identifying information. The name given by the driver (Pablo Vega) matched the name on the car registration. Vega told the trooper that the front seat passenger could identify him.

Trooper Cahill returned to the car to confirm the information provided to him by the driver. He stood beside the front door on the passenger's side of the car to inquire further. The front seat passenger produced a Massachusetts welfare card in response to a request for identification. He also confirmed the driver's name. While he was questioning the front seat passenger, Trooper Cahill observed that there was an aluminum baseball bat sticking out from under the seat between the passenger's legs. He saw no other sporting equipment in the car. Remembering that two weeks earlier a police officer in Lawrence had been beaten to death with an aluminum baseball bat during a routine traffic stop, Trooper Cahill became concerned for his safety. He called for a backup cruiser. He also asked the front seat passenger to step out of the car and conducted a pat frisk of that passenger. The officer felt nothing suggesting a weapon on that passenger and asked him to sit on the guard rail.

Rivera, the defendant, who was sitting behind the front seat passenger, was now clutching a "boom box" (a large radio) in his lap; it had not been on his lap previously. Again, concerned for his safety, Trooper Cahill requested that Rivera step out of the car and attempted to conduct a pat frisk. Although instructed (in Spanish) by Trooper Cahill and by one of the occupants of the car to place both hands on the trunk of the car, Rivera kept taking one of his hands off the trunk and clutching his jacket. When the trooper managed to conduct the pat frisk, he felt what he thought was a weapon in Rivera's jacket. Because he was unable to locate the item he felt in any pocket, the trooper removed the jacket and placed it on the bumper of his police cruiser.

By this time, Trooper Mark A. Caponette responded to the call for backup. He searched the jacket and found the buck knife and a large number of packets containing what he

thought was heroin between the lining and the outer shell of the jacket. Meanwhile, Trooper Cahill pat frisked the fourth occupant of the car. After what appeared to be heroin was found in Rivera's jacket, all four occupants of the car were placed under arrest.

Rivera does not take issue with the legality of the stop. Trooper Cahill had a right to stop the car after observing the driver speeding. See *Commonwealth* v. *Sumerlin*, 393 Mass. 127, 131 (1984), cert. denied, 469 U.S. 1193 (1985); *Commonwealth* v. *Figueroa*, 18 Mass. App. Ct. 967 (1984). Nor does Rivera dispute that the trooper had the authority to proceed with his investigation by approaching the passengers after the driver failed to produce a valid license. Contrast *Commonwealth* v. *Ferrara*, 376 Mass. 502 (1978); *Commonwealth* v. *Loughlin*, 385 Mass. 60 (1982).

What Rivera does contest is the legality of the frisk itself. A frisk is permissible when a police officer has reason to believe, based on specific and articulable facts, that the defendant is armed and dangerous. See *Terry* v. *Ohio*, 392 U.S. 1, 27 (1968). *Commonwealth* v. *Silva*, 366 Mass. 402, 405-406 (1974). *Commonwealth* v. *Cheek*, 413 Mass. 492, 494-495 (1992).[2] Rivera argues that the presence of the baseball bat in the car was not enough to cause a reasonably prudent police officer to believe the defendant was armed and dangerous; he, therefore, contends that the frisk was unreasonable.

Evaluation of the propriety of a frisk search, as we said at the beginning of this opinion, involves the whole picture. While one factor by itself may appear innocent — e.g., the presence of a baseball bat — and, therefore, insufficient to support a frisk, taken in combination with other factors, there may be the requisite reasonable apprehension about

---

[2]The defendant asks us to consider whether, assuming the frisk was lawful under the Fourth Amendment to the United States Constitution, the frisk violates "the stricter requirements of art. 14 of the Massachusetts Declaration of Rights." However, our appellate courts have never held that the State Constitution affords the individual more (or less) protection with respect to *Terry*-type stops and frisks. *Commonwealth* v. *Fraser*, 410 Mass. at 543 n.3. We decline the defendant's invitation to read art. 14 differently than the Fourth Amendment in the circumstances of this case.

safety or a crime having been committed. See *Commonwealth* v. *Fraser*, 410 Mass. at 545.

In addition to the baseball bat, there were several other factors which the motion judge could have taken into account in concluding that the trooper reasonably feared for his safety. That there were four men in the car while Trooper Cahill was acting alone reasonably raised his anxiety level. See *Commonwealth* v. *Sumerlin*, 393 Mass. at 131. There was no other sporting equipment visible in the car.[3] Trooper Cahill was conscious of the recent fatal bludgeoning of a police officer with an aluminum baseball bat while the officer had been making an apparently routine traffic stop. There had been more than one person in the car stopped by the slain police officer. Finally, the bat was underneath the seat in front of Rivera who: (1) had looked around at the trooper as soon as he put his lights on; (2) had bent forward, as if to place something on the floor, as the trooper approached the car; (3) had access to the bat and posed a threat to the trooper; and, (4) had placed in his lap a boom box, in the battery compartment of which a small weapon could have been concealed. All these factors, taken in combination, support the judge's ultimate finding that the trooper's fear was reasonable and, therefore, the pat frisk of Rivera outside the car was constitutionally permissible. Compare *Commonwealth* v. *Cheek*, 413 Mass. at 492.

As a result, the heroin found in Rivera's jacket was not the fruit of an unlawful search and need not have been suppressed. See *Wong Sun* v. *United States*, 371 U.S. 471 (1963). Contrast *Commonwealth* v. *Ferrara*, 376 Mass. at 505; *Commonwealth* v. *Loughlin*, 385 Mass. at 63.

*Judgment affirmed.*

---

[3]When officers later opened the trunk of the car for an inventory search, they found baseball mitts, a softball, another baseball bat, volleyballs, and badminton racquets.