COMMONWEALTH *vs.* NESTOR N., a juvenile.[1]

No. 05-P-865.

Suffolk. February 7, 2006. - August 28, 2006.

Present: DUFFLY, BROWN, & KATZMANN, JJ.

*Youthful Offender Act. Practice, Criminal,* Motion to suppress. *Search and Seizure,* Threshold police inquiry, Reasonable suspicion. *Threshold Police Inquiry. Constitutional Law,* Search and seizure, Reasonable suspicion, Investigatory stop. *Firearms.*

A trial court judge erred in granting a youthful offender's pretrial motion to suppress all evidence found by a police officer during a patfrisk, where the police officer's actions were justified by an objectively reasonable suspicion of criminal activity, based on specific and articulable facts, namely, circumstances that would have led a reasonable officer to believe that the youth was about to pull a weapon from the waistband of his pants. [227-231] BROWN, J., concurring.

INDICTMENTS found and returned in the Superior Court Department on May 18, 2004.

After transmittal of the youthful offender indictments to the Suffolk County Division of the Juvenile Court Department, a pretrial motion to suppress evidence was heard by *Leslie E. Harris*, J.

An application for leave to prosecute an interlocutory appeal was allowed by *Judith A. Cowin*, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by her to the Appeals Court.

---

[1] At the time of his arrest, the defendant was sixteen years old. Initially arraigned on a delinquency complaint in the Juvenile Court, the defendant was later indicted as a youthful offender in Superior Court, and the indictment was remitted to the Juvenile Court at the Commonwealth's request. "The label ' "[y]outhful offender" refers not to a status necessary before an indictment may be brought by a prosecutor, but to a status that is an outcome of indictment and adjudication.' " *Commonwealth* v. *Quincy Q.*, 434 Mass. 859, 863 (2001), quoting from *Commonwealth* v. *Clint C.*, 430 Mass. 219, 222 n.4 (1999).

*Kathleen Celio*, Assistant District Attorney *(Jeremy Bucci*, Assistant District Attorney, with her) for the Commonwealth.

*Holly T. Smith* for the defendant.

DUFFLY, J. Prior to trial, the defendant, who was charged with unlawful possession of a rifle pursuant to G. L. c. 269, § 10(*a*), moved to suppress all evidence found by police on his person during a patfrisk. This is the Commonwealth's interlocutory appeal from the allowance of that motion. We reverse.

*Facts.* We summarize the facts found by the motion judge and supplemented by the undisputed testimony.[2] On the evening of April 28, 2004, Officer Felipe Colon and Detective James Freeman of the Boston drug control unit were in plain clothes and driving in an unmarked passenger van in the Dorchester section of Boston gathering intelligence in response to numerous complaints of drug activity in the area. As they drove down Bird Street, they observed a group of about five males, who appeared to be of high school age, gathered around an illegally parked car. Some of the youths were at the vehicle's window talking with those inside. Upon making eye contact with the officers, the group of males began to walk away from the direction of the van.[3] These activities aroused the officers' suspicions — Officer Colon testified that he believed that a drug transac-

---

[2] Only the two arresting officers testified at the hearing.

[3] The motion judge's written ruling includes these statements: "Officer Colon acknowledged that even though he and [O]fficer Freemen were in plain clothes and in an unmarked van, the van was known to be a police vehicle in the area. . . . He reported that, upon making eye contact with the group of males — and the group realizing that the people in the van were police — the group began to walk away from the vehicle and towards Columbia Road."

Even assuming that this recitation of the evidence constitutes findings of fact, compare *Care & Protection of Lillith*, 61 Mass. App. Ct. 132, 141 (2004) (judge recited testimony but did not make findings indicating he had assessed credibility of witness), with *Koch* v. *Commissioner of Rev.*, 416 Mass. 540, 545 (1993) (clear from context and heading that recitation of testimony constituted findings), and the evidence was otherwise admissible (and we do not so decide), the assumed findings — that the van was known to be a police van and that the group had identified its occupants to be police — are not supported by the evidence. Officer Colon's affirmative answer to the question, "So your presumption is that they knew you were a police officer," is not evidence of what the members of the group knew. Nor does his testimony — that the group dispersed "as soon as we came in the area, and our vehicle is known in that area" — support a finding that any member of this group knew the van was a police vehicle.

tion was about to take place — and they wanted to get a better view. Officer Colon and Detective Freemen circled the block so as to encounter the group face-to-face.

As the group got closer to the officers, Officer Colon noticed that the defendant was walking with his right hand clenching something on his right hip and his right elbow close to his waist, and that he was "walking funny" — limping and favoring his right leg.[4] At this point, Officer Colon exited the van, acting as if he were saying goodbye to Detective Freeman so as to avoid scaring the youths away before he had a chance to approach and speak to them. On reaching the group, Officer Colon displayed his badge and said, "[H]ang on a second; Boston Police, can I talk to you?" We quote directly from the judge's ruling for the following facts: "[The defendant] stopped, looked at [O]fficer Colon, then took his right hand from his hip and took a step backwards. Subsequently [the defendant] placed his right hand into the right side of the waistband of his pants.[5] At this time, [O]fficer Colon attempted to control [the defendant's] movement of his right hand. A search of [the defendant] by [O]fficer Colon revealed a .22 caliber rifle." The defendant was then placed under arrest.

*Discussion.* The motion judge identified as the primary issue whether "the officers had an objectively reasonable suspicion of criminal activity, based on specific and articulable facts[,] to justify pursuit." He concluded that Officer Colon conducted an unconstitutional stop of the defendant when he left the van and approached the defendant and the group in order to question them, and that "the only facts that the police had to support reasonable suspicion were: (1) a high crime area; (2) the defendant[] making eye contact and walking away; (3) and [the defendant] limping." On this basis, the judge further concluded that the defendant "plac[ing] his right hand into the right side of the waistband of his pants cannot be used in the reasonable

---

[4]Officer Colon testified that he believed the defendant was carrying a weapon and that he had seen other individuals employ this manner of walking in order to conceal shotguns, baseball bats, axes, and BB guns. The judge made no findings to this effect.

[5]The officer testified that the defendant "took his hand off his right side, took a step back, then went back towards his waist, at that time I went and grabbed his hands [*sic*] in his waist."

suspicion analysis because reasonable suspicion must exist *before* the stop is made" (emphasis original).

When reviewing a judge's determination on a motion to suppress, "we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of his ultimate findings and conclusions of law.' " *Commonwealth* v. *Scott*, 440 Mass. 642, 646 (2004), quoting from *Commonwealth* v. *Jimenez*, 438 Mass. 213, 218 (2002).

A person is "seized" or "stopped" in the constitutional sense only if, in view of all the attending circumstances, "a reasonable person would have believed that he was not free to leave." *Commonwealth* v. *Rock*, 429 Mass. 609, 611 (1999), quoting from *Commonwealth* v. *Borges*, 395 Mass. 788, 791 (1985). Not every field encounter between a police officer and a member of the public constitutes "an intrusion of constitutional dimensions requiring justification." *Commonwealth* v. *Rock, supra*, quoting from *Commonwealth* v. *Stoute*, 422 Mass. 782, 789 (1996). "[O]fficers may make inquiry of anyone they wish . . . , so long as they do not implicitly or explicitly assert that the person inquired of is not free to ignore their inquiries." *Commonwealth* v. *DePeiza*, 66 Mass. App. Ct. 398, 401, further appellate review granted, 447 Mass. 1105 (2006), quoting from *Commonwealth* v. *Murdough*, 428 Mass. 760, 763 (1999).

Officer Colon's initial actions — driving the van around the block so as to encounter the youths face-to-face after they had walked away from the van, exiting the van, approaching the group, identifying himself as a police officer, and saying "hang on a second . . . can I talk to you?" — did not constitute a stop under either the Fourth Amendment to the United States Constitution or art. 14 of the Massachusetts Declaration of Rights. At no point, as they circled the block and approached the group, did the police "employ the talismans of blue lights, flashers, or sirens," *Commonwealth* v. *DePeiza, supra* at 402, nor did their initial actions "block or control [the defendant's] path, direction, or speed." *Commonwealth* v. *Grandison*, 433 Mass. 135, 138 (2001), quoting from *Commonwealth* v. *Watson*, 430 Mass. 725, 731 (2000). Because Officer Colon's statement was not a command to stop but a request to speak with the defendant and ask questions, it lacked the compulsory dimen-

sion that would thereby transform the encounter into a seizure. See *Commonwealth* v. *Barros*, 435 Mass. 171, 174-175 (2001). See also *Commonwealth* v. *Fraser*, 410 Mass. 541, 543 (1991) (police officer did not seize defendant "by approaching him, identifying himself as a police officer, and asking him to take his hands out of his pockets"); *Commonwealth* v. *Rock, supra* at 612 ("Approaching in an unmarked cruiser, leaving the cruiser, and requesting to speak with a citizen, without more, does not constitute a seizure"); *Commonwealth* v. *Mulero*, 38 Mass. App. Ct. 963, 964 (1995) (no seizure during initial inquiry of defendant by police officer regarding gun charges in absence of display of authority); *Commonwealth* v. *Wallace*, 45 Mass. App. Ct. 930, 931 (1998) (fact that unmarked police vehicle backed up in direction of defendant did not amount to stop, nor did officer's subsequent self-identification). In the absence of seizure, there is no need for the police to justify their conduct by showing a reasonable suspicion of criminal activity. *Commonwealth* v. *Harkess*, 35 Mass. App. Ct. 626, 629 (1993).

This does not end our inquiry, however, because we conclude that a stop of the defendant did occur under art. 14 when Officer Colon grabbed the defendant's hands as the defendant reached toward, and perhaps into, his waistband.[6] By this restraint of the defendant's hand movements the officer displayed a show of authority that would have communicated to a reasonable person that he or she was not free to leave. See *Commonwealth* v. *Pimentel*, 27 Mass. App. Ct. 557, 560 (1989) (physical touching of citizen by police officer may be indicative of seizure). Having concluded that the defendant was seized when the officer grabbed his hands, we must determine whether the officer's stop and contemporaneous patfrisk were justified by reasonable suspicion.[7]

A police officer may stop and frisk an individual for the of-

---

[6]See *Commonwealth* v. *Stoute, supra* at 785-789, for the proposition that art. 14 provides individuals with greater substantive protections than the Fourth Amendment in terms of deciding when a "seizure" has occurred, and thereby reaffirming adherence to the more protective standard expressed in *Commonwealth* v. *Thibeau*, 384 Mass. 762 (1981).

[7]The analysis applicable to a protective stop and frisk is the same under the Fourth Amendment and art. 14. *Commonwealth* v. *Rivera*, 33 Mass. App. Ct. 311, 314 n.2 (1992).

ficer's own safety and the safety of others if the circumstances reasonably suggest that the person is armed and potentially dangerous. See *Commonwealth* v. *Pagan*, 63 Mass. App. Ct. 780, 782-783 (2005). In our review of the propriety of such a search, we apply an objective standard of reasonableness and look to the totality of the circumstances, see *Commonwealth* v. *Patti*, 31 Mass. App. Ct. 440, 443 (1991); *Commonwealth* v. *Rivera*, 33 Mass. App. Ct. 311, 314 (1992), keeping in mind that "[w]hile one factor by itself may appear innocent . . . and, therefore, insufficient to support a frisk, taken in combination with other factors, there may be the requisite reasonable apprehension about safety or a crime having been committed." *Id.* at 314-315.

The facts of this case are, in some respects, similar to those in *Commonwealth* v. *DePeiza*, 66 Mass. App. Ct. at 398-401, where we concluded that the stop and search of the defendant, who was walking rigidly, favoring one side, was not justified. We stated in *DePeiza* that "an individual's manner of walking," even late at night in a high crime area, was too idiosyncratic to serve as a reasonable basis for a stop and frisk. *Id.* at 404. We concluded, however, that the presence of some other factor, such as an officer's knowledge of the defendant's criminal past, a report of shots fired, or a furtive movement made by the defendant prior to the stop and search, might have provided justification for the stop and search of the defendant. *Id.* at 402-405. In *DePeiza*, unlike in this case, the defendant "never made a movement to his jacket pocket or his waistband, factors that in other contexts have given rise to a reasonable apprehension of danger." *Id.* at 405. "Strange, furtive, or suspicious behavior or movements can infuse otherwise innocent activity with an incriminating aspect." *Commonwealth* v. *Pagan*, *supra*. See *Commonwealth* v. *Patti*, *supra* at 443-444 (uniformed officer, who was conducting threshold inquiry of defendant alone at night in high crime area, was justified in frisking defendant after he reached into his pockets); *Commonwealth* v. *Fisher*, 54 Mass. App. Ct. 41, 44-45 (2002) (uniformed officer patrolling high crime area late at night was justified in pat frisk-

ing defendant for his safety and safety of others given defendant's evasiveness and quick motion to his waist).[8]

The defendant's limping gait in this case, with his right hand clenching something on his right hip and holding his right elbow close to his waist, while not alone sufficient to create a reasonable basis for the officer's concern, was followed by the defendant's stepping back and reaching towards his waist, a gesture that in the circumstances would have justified a reasonable officer's belief that the defendant was about to pull out a weapon. That the officer was outnumbered and the encounter occurred in a high crime area, late at night, added to the totality of the circumstances to provide a reasonable basis for Officer Colon to conclude that the defendant was potentially armed and dangerous, justifying the stop and search.

*Order allowing motion to suppress reversed.*

BROWN, J. (concurring). Again, we see a situation that comes dangerously close to impermissible conduct on the part of the police. See and compare *Commonwealth* v. *DePeiza*, 66 Mass. App. Ct. 398, further appellate review granted, 447 Mass. 1105 (2006). However, I am constrained to concur based on the reasoning of *Commonwealth* v. *Pagan*, 63 Mass. App. Ct. 780, 781-783 (2005). Of course, an officer can respond to a hand movement toward a waistband, but I am still amazed how a peculiar gait automatically triggers a stop and an inquiry.[1]

---

[8]In addition, Officer Colon was outnumbered by the defendant and his group. See *Commonwealth* v. *Rivera, supra* at 315 (that officer was outnumbered was factor in determining whether patfrisk of defendant was reasonable).

[1]It is equally curious and worthy of particular note that here the defendant had a rifle (apparently tucked in his waistband) and in *DePeiza, supra,* the so-called straight leg gait (allegedly well known by police officers) revealed a handgun. Thus, I am ineluctably led to this conclusion — any walk fits all. In other words, it is the walk, not the type of weapon, that jump starts the stop. Could this be a ploy?