COMMONWEALTH vs. GLYNN JACKSON.

No. 06-P-1492.

Plymouth. October 5, 2007. - December 24, 2008.

Present: PERRETTA, BERRY, & TRAINOR, JJ.

*Firearms. Constitutional Law,* Investigatory stop. *Search and Seizure,* Protective frisk, Threshold police inquiry. *Threshold Police Inquiry.*

Discussion of the analysis applicable to a challenge to the use as evidence of items seized by police during a "stop and frisk." [413-414]
A Superior Court judge properly denied the criminal defendant's motion to suppress evidence retrieved from his jacket pocket by a police officer during a protective "stop and frisk," where the patfrisk was based on the officer's reasonable belief, upon observing the defendant's jacket, which appeared to contain something of weight, that the defendant was armed and dangerous. [415]

INDICTMENTS found and returned in the Superior Court Department on March 26, 2004.

A pretrial motion to suppress evidence was heard by *Richard J. Chin,* J., and the cases were tried before *Paul E. Troy,* J.

*David M. Skeels,* Committee for Public Counsel Services, for the defendant.

*Kristen A. Stone,* Assistant District Attorney, for the Commonwealth.

PERRETTA, J. On appeal from convictions on indictments arising out of his possession of a handgun and ammunition,[1] the defendant argues that the judge erred in denying his motion to suppress the evidence retrieved from his jacket pocket by the police during a protective "stop and frisk." Although the defendant challenges neither the legality of the investigatory stop nor the scope of the search if permissibly initiated, he contends that the frisk was prohibited by the Fourth and Fourteenth Amend-

[1]See G. L. c. 269, § 10(*a*) and (*d*), second offense, and G. L. c. 269, § 10(*h*).

ments to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights. Concluding that the police made a lawful investigatory stop of the defendant and quickly thereafter had reason to believe that he was in illegal possession of a firearm, we affirm his convictions.

1. *The facts.* We relate the facts found by the judge as supplemented by those not in dispute. On the early morning of February 11, 2004, Brockton police Detectives George Almeida and Daniel Delehoy were on patrol on the so-called "high impact shift." Detectives on the "high impact shift" work in conjunction with the Federal Bureau of Alcohol, Tobacco, and Firearms for purposes of targeting gang activity, firearms, and street violence in Brockton.

At about 2:00 A.M., Almeida observed the defendant and another man near the intersection of Main and Centre Streets. The man with the defendant was known to Almeida as having a criminal history. Almeida also knew the defendant from his "several past encounters" with him in the course of his work. He was aware that the defendant had been convicted of a firearms violation in January, 2003, for which he had been sentenced to a term of eighteen months' incarceration. At the time of his observations on the early hours of February 11, 2004, Almeida believed the defendant to be on parole and in violation of his parole obligations by reason of his presence on the streets after an imposed curfew, as well as his association with a person having a criminal history.

Intending to make inquiry into the defendant's possible parole violations, Almeida and Delehoy circled the block and returned to the area where they had seen the defendant and his companion. By the time the detectives arrived at the point of their last observation of the men, they were gone. However, the detectives were able to find the defendant and his companion a short time later as they walked beneath a railroad bridge. Almeida testified that the area by the railroad bridge "can be a high crime area," and that it was near Gigi's Lounge, a high crime area in which the police have had numerous problems.[2]

Almeida and Delehoy were quickly joined at the scene by

---

[2]The judge made no finding with respect to whether the area was a "high crime area," nor did he rely on Almeida's testimony on this point in denying the defendant's motion to suppress. In any event, Almeida's testimony on this point was undisputed.

two other detectives. When the defendant saw the four detectives get out of their cars, he stopped walking. Almeida approached the defendant and told him that "it was kind of late for a parolee to be out" and suggested that he, Almeida, intended to call the defendant's parole supervisor. The defendant asked him not to do so.

As Almeida and the defendant were speaking, Almeida saw that the bottom lining of the defendant's leather jacket hung lower on the left side than on the right and that there were "striations" in the left shoulder area of the jacket. These observations led Almeida to believe that there was something of weight in the pocket of the defendant's jacket.

Based upon his training and experiences involving arrests for firearm violations, Almeida knew that firearms are most commonly carried where they are readily accessible, that is, in the waistband of trousers or in an inner jacket pocket. Aware of the defendant's prior firearm conviction and the fact that the defendant had enemies on the streets, Almeida became concerned that the defendant was carrying a firearm. He told the defendant that he "would cut him loose immediately, but prior to cutting him loose [he was] . . . going to pat frisk him for . . . safety." The defendant then put his hands behind his head, as instructed. When he did so, Almeida saw that his jacket had a "slight pendulum swing" consistent with the presence of a weighty object in a pocket.

While patting down the left side of the defendant's jacket, Almeida grabbed the handle of a gun. He immediately directed one of his fellow officers to handcuff the defendant. Once the defendant's hands were restrained, Almeida reached inside the defendant's jacket and retrieved a semiautomatic handgun containing ten rounds of ammunition in the magazine and one in the chamber.

In considering the defendant's arguments on appeal, we accept the judge's unchallenged findings of fact as supplemented by undisputed evidence. We review de novo his "application of constitutional principles" to those established facts. *Commonwealth* v. *DePeiza*, 449 Mass. 367, 369 (2007), quoting from *Commonwealth* v. *Catanzaro*, 441 Mass. 46, 50 (2004).

2. *The applicable law.* It is well established that in analyzing a challenge to the use as evidence of items taken during a "stop

and frisk," our inquiry is twofold: whether the investigatory stop of the defendant was supported by reasonable suspicion, and whether the seizure of the firearm from the defendant's person was permissible in the circumstances presented. See *Commonwealth* v. *Silva*, 366 Mass. 402, 405 (1974); *Commonwealth* v. *Almeida*, 373 Mass. 266, 270 (1977), *S.C.*, 381 Mass. 420 (1980); *Commonwealth* v. *Torres*, 433 Mass. 669, 672 (2001). The defendant's brief is principally focused on the legality of the patfrisk. Thus, the real issue before us is whether Almeida's frisk of the defendant was justified by a reasonable belief that the defendant was armed and dangerous.[3] See *Terry* v. *Ohio*, 392 U.S. 1, 27 (1968); *Commonwealth* v. *Fraser*, 410 Mass. 541, 544 (1991); *Commonwealth* v. *DePeiza*, 449 Mass. at 374.

To be reasonable, such a belief must "be based on specific and articulable facts and the specific and reasonable inferences which follow from such facts in light of the officer's experience." *Commonwealth* v. *Silva*, *supra* at 406. See *Commonwealth* v. *Fisher*, 54 Mass. App. Ct. 41, 44 (2002). See also *Commonwealth* v. *Narcisse*, ante 406, 408 (2008). In reviewing the legality of a protective frisk,

> "we apply an objective standard of reasonableness and look to the totality of the circumstances, . . . keeping in mind that while one factor by itself may appear innocent . . . and, therefore, insufficient to support a frisk, taken in combination with other factors, there may be the requisite reasonable apprehension about safety or a crime having been committed."

*Commonwealth* v. *Nestor N.*, 67 Mass. App. Ct. 225, 230 (2006) (quotations and citations omitted). See *Commonwealth* v. *Fraser*, 410 Mass. at 545.

---

[3]It appears from his memorandum of decision that the judge applied the "reasonable suspicion" standard set out in *Commonwealth* v. *LaFrance*, 402 Mass. 789, 792-796 (1988), wherein the court considered those circumstances in which a probation officer could lawfully conduct the search of a probationer or his residence. Because we conclude that Almeida's frisk of the defendant was based on a reasonable belief that the defendant was armed and dangerous, we have no reason to consider whether the powers of probation and parole officers are greater than those of police officers in matters involving circumstances such as those before us or whether a reasonable suspicion is qualitatively less than a reasonable belief.

3. *Discussion.* Application of Federal and State constitutional principles to the facts found by the judge leads us to conclude that Almeida's frisk of the defendant was justified and within permissible limits. That Almeida's investigatory stop of the defendant was permissible is undisputed.

The stop took place at 2:00 A.M., in an area that, if not a designated or known high crime area, was near a lounge in a high crime area in which the police had encountered numerous problems. See note 2, *supra.* At the time of the stop Almeida had reason to believe that the defendant was in violation of his parole. He knew that the defendant had been sentenced to eighteen months' incarceration in January, 2003, for a firearms violation; that the defendant was most likely in violation of his parole curfew; that his companion had a criminal history; and that he, the defendant, had enemies.

Upon making the investigatory stop and while speaking with the defendant, Almeida made observations concerning the defendant's jacket that led him to believe that there was something of weight in the jacket. Based on his training and experience, Almeida knew that firearms were usually carried in either a waistband or the inner pocket of a coat. Although Almeida indicated a willingness to let the defendant go on his way, he said that he was first going to frisk him for "safety."

As stated in *Commonwealth* v. *Isaiah I.,* 450 Mass. 818, 824 (2008):

> "A patfrisk is constitutionally justified when an officer reasonably fears for his own safety *or* the safety of the public, *Commonwealth* v. *DePeiza, supra* at 374, and cases cited, *or* when the police officer reasonably believes that the individual is armed and dangerous. *Commonwealth* v. *Wilson,* 441 Mass. 390, 394 (2004)" (emphasis added).

4. *Conclusion.* Based upon our application of the law to the judge's findings, we conclude that the frisk of the defendant was based upon a reasonable belief that he was armed and dangerous and, consequently, a threat to public safety even if not to the arresting officers.

*Judgments affirmed.*