## COMMONWEALTH *vs.* STEVEN WEBSTER.

No. 08-P-31.

Suffolk. November 4, 2008. - September 25, 2009.

Present: McHugh, Sikora, & Rubin, JJ.

*Firearms. Probable Cause. Constitutional Law,* Search and seizure, Probable cause. *Search and Seizure,* Arrest, Warrant. *Practice, Criminal,* Warrant.

At proceedings arising from a criminal defendant's pretrial motion to suppress evidence seized by police at the time of his arrest pursuant to a warrant, as well as evidence seized by police during a subsequent search of the defendant's apartment, neither the motion judge's subsidiary findings nor the record supported the judge's ultimate conclusion that the police reasonably believed that the defendant was in the apartment when they entered it and occupied it to await the defendant's return [251-253], and where the police seized the defendant as a direct consequence of their illegal presence in the apartment (i.e., by giving chase when the defendant, upon returning to the apartment, fled at the sight of the police), their subsequent recovery of a firearm from the defendant's person and the defendant's contemporaneous statement were tainted to such an extent that suppression of both and prohibition of their use at trial was required [253-256]; however, where no fruits of the illegal entry generated information used by police to secure a search warrant for the defendant's apartment, and where the affidavit that the police submitted in support of their warrant application provided probable cause for the warrant to issue, the judge properly denied the defendant's motion with respect to the evidence found in a search of the defendant's apartment following the defendant's arrest [256-259].

INDICTMENTS found and returned in the Superior Court Department on March 31, 2004.

A pretrial motion to suppress evidence was heard by *Elizabeth B. Donovan*, J., and the cases were tried before *Nancy Staffier-Holtz*, J.

*Brownlow M. Speer*, Committee for Public Counsel Services (*Bruce R. Bono*, Committee for Public Counsel Services, with him) for the defendant.

*David D. McGowan*, Assistant District Attorney, for the Commonwealth.

McHugh, J. Steven Webster, the defendant, was indicted on

eight charges, five arising out of a shooting on February 11, 2004, and three arising out of his arrest and the search of his home on February 18, 2004. Only the latter three are relevant to this appeal, and those charges are (1) possession of a firearm outside a home or business without a license to carry, second offense, see G. L. c. 269, § 10(*a*); (2) possession of a firearm without a firearm identification card, see G. L. c. 269, § 10(*h*); and (3) possession of ammunition without a firearm identification card, see G. L. c. 269, § 10(*h*). The first of these charges refers to a .32 caliber pistol taken from the defendant's waistband at the time of his arrest (waistband pistol), the second refers to a .380 caliber pistol found under a mattress during a search of his home (mattress pistol), and the third refers to ammunition found with the mattress pistol.

The defendant filed a motion to suppress the pistols and the ammunition. After an evidentiary hearing, a judge in the Superior Court denied the motion. At a subsequent jury trial, the defendant was convicted of illegal possession of ammunition and acquitted of all five charges related to the shooting. In a later jury-waived trial, he was convicted of the charges arising from possession of the pistols. He appeals, claiming that the motion to suppress should have been allowed. We affirm in part and reverse in part.

1. *Facts.* The motion judge's findings of fact, "occasionally supplemented with undisputed evidence from the record," *Commonwealth* v. *Townsend*, 453 Mass. 413, 419 (2009), reveal the following chain of events. See *Commonwealth* v. *Isaiah I.*, 448 Mass. 334, 337 (2007).

A Boston police investigation of the February 11, 2004, shooting of a man named Steven Nixon led to a warrant for the defendant's arrest. Nixon identified the defendant as the shooter, so there is no question that the warrant was supported by probable cause. At approximately 11:00 A.M. on February 18, 2004, Boston police Officers Fabiano and Griffin, accompanied by Boston police Sergeant Detective Bailey, went to 402 Centre Street, where the defendant lived with his mother, Jackline Webster, to execute the warrant because, the motion judge found, the officers "had information that [the defendant] was returning to the apartment." The record does not reveal the source of that information.

As the officers approached the apartment building, they en-

countered a man named Stephen Smith, Ms. Webster's fiancé, who lived in the apartment with her. With respect to that encounter, the judge found as follows:

> "The police officers approached and asked his name. He identified himself as [Stephen] Smith and stated that he did live on the second floor with his girlfriend and her son. He was shown a picture of the defendant and acknowledged it was his girlfriend's son. . . .

> "The police explained they had an arrest warrant for the defendant. He was asked if he had a key to [the] apartment and Mr. Smith indicated he did. An officer stated that was good because otherwise they would have to break down the door to gain entrance to see if [the defendant] was there. They asked if he would open the door. He agreed."[1]

After opening the apartment door, Smith left for work and Officers Fabiano and Griffin entered in accordance with Sergeant Detective Bailey's instructions that they should "freeze" the apartment while he went for a search warrant. Their search revealed that no one was in the apartment, so the officers remained to await the defendant's arrival. One officer left briefly to move the marked cruiser in which they had arrived so that, as the motion judge found, "it would not be obvious."[2]

Eventually, the officers heard footsteps on the stairway and a key in the lock.[3] The door opened and the defendant stepped into the apartment.[4] The judge found that "the officers announced

---

[1]In a footnote, the judge stated that she did not credit Smith's testimony that police, with guns drawn, had thrown him against a car before asking those questions. She made no finding one way or the other with respect to Smith's testimony that he told police that the defendant was not in the apartment, although the Commonwealth did not urge her to reject that testimony. In fact, the affidavit police filed in support of the search warrant said that Smith told the officers "that [the defendant] had not come home the previous evening but did reside" in the apartment.

[2]Officer Fabiano testified that "in case the suspect did come home, we didn't want to alert him to the fact that we were there."

[3]The judge made no finding regarding the length of time the officers were in the apartment before they heard the footsteps. Officer Fabiano testified that it was about forty-five minutes, and his police report put the time at approximately thirty-nine minutes.

[4]The judge did not find that the defendant actually stepped into the apartment. Officers Fabiano and Griffin, however, both testified that he did.

their presence. [The defendant] slammed the door and ran back outside." Officer Griffin gave chase while Officer Fabiano remained in the apartment and broadcast over his radio an alarm that the chase was in progress.

Pursuit ended with the defendant on the ground in the custody of Officer Griffin and another officer who, alerted by the broadcast, had joined the chase. Upon hearing Officer Griffin tell the other officer that the defendant was probably armed, the defendant stated, "[I]t's in my waistband," and that he carried it "for protection because it's crazy out there." Officer Griffin seized the pistol, gave the defendant Miranda warnings, transported him to a police station for booking, and returned to the apartment.

The defendant's mother, Ms. Webster, had left the apartment at about 7:15 A.M. to attend an educational seminar. She returned at about 2:30 P.M. to find the apartment occupied by police. The officers told her they had secured the apartment and were waiting for a search warrant due to her son's arrest. The police told Ms. Webster to sit at a table in the kitchen, where, at some point, she was joined by a friend.

The judge found that, while the two women were sitting at the kitchen table, "Officer Fabiano, who chews tobacco[,] was spitting the residue into the sink. He had a conversation with Ms. Webster about some porno videos that she had hidden in her room. The officer also made comments about other paraphernalia associated with the pornographic videos." During the afternoon, the telephone rang several times, but the police would not allow the women to answer it, and asked instead about the names indicated by the telephone's "call identification" ("caller ID"), and about one of the defendant's friends generally.

The search warrant finally issued at about 6:00 P.M., seven hours after the officers first entered the apartment. Execution of the warrant produced, among other things, the mattress pistol and two rounds of ammunition.

On those facts, the judge denied the motion to suppress, concluding that (1) the police entered the defendant's home lawfully because they had a warrant and a reasonable belief that he was home; (2) removal of the firearm from the defendant's waistband resulted from a search incident to lawful arrest and

from volunteered information; (3) though police were not warranted in securing the premises from inside, and at least one officer conducted a search of the apartment before obtaining a warrant, no information obtained from the apartment was used in the affidavit in support of the search warrant and, so, the resulting search warrant was not tainted; and (4) in any event, if police had secured the apartment from outside, the mattress pistol and the ammunition would have been discovered when executing the search warrant, and the exclusionary rule only requires suppression of evidence that police could not independently acquire by lawful means.

2. *Discussion.* "In considering the defendant's arguments on appeal, we accept the judge's unchallenged findings of fact as supplemented by undisputed evidence. We review de novo [her] 'application of constitutional principles' to those established facts." *Commonwealth* v. *Jackson,* 73 Mass. App. Ct. 411, 413 (2008), quoting from *Commonwealth* v. *DePeiza,* 449 Mass. 367, 369 (2007). See *Commonwealth* v. *Catanzaro,* 441 Mass. 46, 50 (2004).

a. *Seizure of the defendant.* In a case decided shortly before the defendant's arrest, the Supreme Judicial Court held that art. 14 of the Massachusetts Declaration of Rights, "like the Fourth Amendment, requires that police with a valid arrest warrant have a reasonable belief that the location to be searched is the arrestee's residence, and a reasonable belief that the arrestee is in his residence at the time the arrest warrant is executed." *Commonwealth* v. *Silva,* 440 Mass. 772, 778 (2004). If police have that reasonable belief, no separate warrant is required for entry because "[a]n arrest warrant 'encompasses the power to enter a [suspect's] residence for the purpose of executing the warrant.' " *Id.* at 776, quoting from *Commonwealth* v. *Nova,* 50 Mass. App. Ct. 633, 634-635 (2000). See *Commonwealth* v. *Allen,* 28 Mass. App. Ct. 589, 592-593 (1990).

"Reasonable belief," like reasonable suspicion, is an objective standard. *Commonwealth* v. *Silva, supra* at 779 n.8. See *Commonwealth* v. *DeJesus,* 439 Mass. 616, 621 (2003). A reasonable belief, therefore, "may not be based on good faith or a hunch, but [must rest instead] on specific, articulable facts and inferences that follow from the officer's experience." *Commonwealth*

v. *Grandison*, 433 Mass. 135, 139 (2001). See *Commonwealth* v. *Mercado*, 422 Mass. 367, 369 (1996), quoting from *Terry* v. *Ohio*, 392 U.S. 1, 21-22 (1968) ("The standard is objective: 'would the facts available to the officer at the moment of the [entry] "warrant a man of reasonable caution in the belief" that the action taken was appropriate?' ").

Here, the police surely had a reasonable belief that the defendant lived in the apartment they targeted. No one argues otherwise. Neither the judge's subsidiary findings nor the record on which she based them, however, support her ultimate conclusion that the police reasonably believed that the defendant was in the apartment when they entered it.[5] Indeed, the judge explicitly found only that "[t]he officers had information that [the defendant] was returning to the apartment," not information that he was there. Even at that, the judge made no finding, and the record contains no evidence, regarding the source of the information, its quality, or anything else that would support a finding that whatever belief the officers had was "reasonable." As the Commonwealth bears the burden of proving that police entered the apartment pursuant to a valid exception to the requirement for a search warrant, those deficiencies are fatal to the Commonwealth's claim of proper entry.[6] See, e.g., *Commonwealth* v. *Snell*, 428 Mass. 766, 774-775 (1999) (discussing emergency exception to warrant requirement).

Even if the entry had been lawful, however, the police discovered that no one was home. As the motion judge found, no evidence indicated that police could not secure the premises from

---

[5]In addition to the evidence cited at note 1, *supra*, the record contains Officer Fabiano's testimony that he "had information that [the defendant] might be coming home at some point." Similarly, Officer Griffin testified that he was "told that [the defendant] may come home" and that a strike force had gone to 402 Centre Street "early in the morning to see if the defendant was around" but had left, suggesting that the strike force had not found him there. The only other evidence on this issue appears in Officer Fabiano's arrest report, which reads: "Officer[s] Fabiano and Griffin . . . responded to 402 Centre St. to freeze the premise at 402 Centre St. for the execution of a search warrant. Officers were advised . . . that the suspect *may* return home today 2/18/2004" (emphasis supplied).

[6]The judge made no finding that the entry was consensual, and the Commonwealth does not undertake what, on this record, would be the very difficult argument that the judge should have. See note 1 and related text, *supra*.

outside, and they "did not have any specific information to support an objective belief that evidence would be destroyed or removed before a search warrant was obtained." Therefore, as she concluded and as the Commonwealth now agrees, they were required to leave and secure the premises from the outside, not wait inside for the defendant to arrive or rummage through the apartment turning up pornographic movies and other irrelevancies. "[P]olice officers who secure a dwelling while a warrant is being sought . . . *may not enter* that dwelling, in the absence of specific information supporting an objectively reasonable belief that evidence will indeed be removed or destroyed unless preventative measures are taken." *DeJesus*, 439 Mass. at 621 (emphasis supplied).

Either because they had no right to enter, or because they had no right to stay, or both, Officers Griffin and Fabiano had no right to be inside the apartment when the defendant arrived. The question, therefore, becomes whether their illegal presence in the apartment tainted their recovery of the pistol from the defendant's waistband and his contemporaneous statement to such an extent that it required suppression of both and prohibition of their use at his trial. We think it did.

In determining whether the officers' illegal presence in the apartment required suppression of the resulting evidence, the first question is whether evidence "has been come at by exploitation of [that] illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Commonwealth* v. *Damiano*, 444 Mass. 444, 453 (2005), quoting from *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 258 (1982). See *Wong Sun* v. *United States*, 371 U.S. 471, 488 (1963). See also *Hudson* v. *Michigan*, 547 U.S. 586, 592 (2006). It is the Commonwealth's "burden to establish that the evidence . . . is sufficiently attenuated from the underlying illegality." *Commonwealth* v. *Damiano, supra* at 454. In this case, the Commonwealth did not satisfy that burden.

For purposes of art. 14, the police seized the defendant when the chase began. As noted, *supra*, when the defendant opened the apartment door and stepped in, the officers inside immediately gave chase as he turned, slammed the door, and fled. He was, at that point, seized, because "a pursuit, which, objectively considered, indicates to a person that he would not be free to leave

the area (or to remain there) without first responding to a police officer's inquiry, is the functional equivalent of a seizure." *Commonwealth* v. *Stoute*, 422 Mass. 782, 789 (1996). See *Commonwealth* v. *Thibeau*, 384 Mass. 762, 764 (1981); *Commonwealth* v. *Sykes*, 449 Mass. 308, 314 (2007).[7]

Although we conclude that the defendant was seized inside the apartment, whether he was just inside or just outside the threshold when the chase began is not critical. Nor is it critical that the police probably would have been able to seize him had they waited outside the apartment or had they looked for him in the neighborhood at some other time. The salient point is that they actually seized the defendant as a direct consequence of their illegal entry and illegal occupation of the apartment. Discovery of the waistband pistol and the statement he made were inextricably bound up in that seizure.

The Commonwealth suggests that suppression is not required because the officers' illegal activity did not create probable cause for the defendant's arrest. Issuance of the arrest warrant, the Commonwealth argues, meant that the police had probable cause to arrest the defendant before they entered the apartment, and nothing they observed while there added or detracted from the probable cause existing before their entry. For that argument, the Commonwealth relies on *Commonwealth* v. *Benoit*, 382 Mass. 210, 216 (1981).

We think that *Benoit* actually points in the opposite direction. In that case, police found incriminating evidence when they conducted a warrantless search of a suitcase based on statements they obtained from the defendant in violation of his right to counsel. *Id.* at 212-213. The Commonwealth argued that the evidence was nonetheless admissible under a theory of inevitable discovery. *Id.* at 215. The Supreme Judicial Court disagreed, saying that:

> "The [United States] Supreme Court has recognized two exceptions to the fruit of the poisonous tree doctrine. Evidence is not excluded under the doctrine if (1) the government obtained it through an independent source, . . . or (2) the 'connection [between the improper conduct

---

[7]Commencement of a chase, although a seizure, is not necessarily an arrest. See *Commonwealth* v. *Grant*, 71 Mass. App. Ct. 205, 208-210 (2008).

and the derivative evidence has] become so attenuated as to dissipate the taint.' . . . These exceptions allow removal of the taint if the government can demonstrate that the improper official conduct was not a sine qua non or 'but for' cause of the discovery of the evidence."

*Id.* at 215-216. Cf. *Commonwealth* v. *Ghee*, 414 Mass. 313, 316 n.4 (1993).

Here, the evidence in question is the waistband pistol and the statement, not the defendant. It therefore makes no difference that the police likely would have been able to effect the defendant's arrest had they waited in another place or looked for him at a different time, or that their illegal conduct neither advanced nor dissipated probable cause for his arrest. No one, the defendant included, suggests that their illegal presence in the apartment meant that they had to turn him loose after making the arrest, just as no one would argue that police have to give back cocaine or other contraband discovered during an illegal search. The remedy available in criminal proceedings for illegal acquisition of evidence is the suppression of the evidence the illegality produced, not invalidation of the evidence-generating event. The relevant question, therefore, is whether the Commonwealth has demonstrated that the "improper official conduct was not a sine qua non or 'but for' cause of the discovery" of the waistband pistol and the acquisition of the defendant's statement. *Commonwealth* v. *Benoit, supra* at 216.

On this record, the Commonwealth cannot make that demonstration. The officers exploited their unlawful entry and their continued presence in the defendant's home to effectuate his arrest. Their behavior exemplified the "unconstitutional shortcut" we cautioned against in *Commonwealth* v. *McAfee*, 63 Mass. App. Ct. 467, 481 (2005). The defendant's statement and the police discovery of the waistband pistol were inseparable ingredients of his arrest. Consequently, the motion to suppress both the waistband pistol and the statement should have been allowed.[8]

---

[8]During and after the booking process, the defendant made additional statements which he argues should be suppressed because they, too, were the product of illegal police activity. Because the motion judge found that the entry was proper, she had no occasion to examine these statements separately. Whether they, too, should be suppressed depends on whether intervening events sufficiently dissipated the taint to allow their admission. See, e.g.,

See *United States* v. *Hardin*, 539 F.3d 404, 408, 425-426 (6th Cir. 2008) (suppressing evidence found in defendant's pocket and in his apartment after police entered that apartment and arrested defendant with arrest warrant, but without reason to believe that defendant was home); *State* v. *Loftin*, 276 S.C. 48, 50 (1981) (because there were "no facts or circumstances from which the officers could have entertained a reasonable belief appellant was in his apartment . . . checks found in the appellant's residence . . . should have been excluded from evidence").

b. *The search.* Different considerations apply to the search that produced the mattress pistol. The motion judge found that no fruits of the illegal entry generated information used to procure the warrant and that the affidavit police submitted in support of their warrant application provided probable cause for the warrant to issue. See generally *DeJesus*, 439 Mass. at 625 ("[R]egardless of the illegality of the initial entry and search, the evidence is admissible as long as the affidavit in support of the application for a search warrant contains information sufficient to establish probable cause to search the defendant's apartment, apart from the observation of [items seen during the illegal entry]"). We agree.[9]

The defendant does not claim that the affidavit had an insufficient independent basis to support the search warrant. Instead, he contends that the fruits of the search should be suppressed

*Commonwealth* v. *Osachuk*, 418 Mass. 229, 235-236 (1994). The inquiry is fact-sensitive and, in the first instance, requires either a hearing in the Superior Court or additional findings based on the record in the prior hearing.

[9]The affidavit submitted in support of the search warrant application mentioned the defendant's arrest and the recovery of the waistband pistol. For reasons stated *supra*, the motion judge did not consider recovery of the waistband pistol to be the fruit of illegal police conduct. If, however, we excise reference to the waistband pistol from the affidavit, probable cause for issuance of the warrant remains. A witness identified the defendant by name, by address, and from photographs as a person fleeing from the area of the shooting. The victim identified him from a photographic array as the man who shot him. Police knew from a variety of sources that he lived in the apartment. Finally, the affiant, a Boston police detective, stated that, based on his training and experience, persons involved in shootings tend to keep firearms at their residences. Probable cause for the search therefore arose from the type of crime, the nature of the missing items, and "normal inferences" about criminal behavior. *Commonwealth* v. *Cinelli*, 389 Mass. 197, 213 (1983) (ammunition "reasonably might be expected to be located in the residence of a person who had participated in an armed robbery") (citation omitted).

because of egregious police misconduct. The misconduct consisted of illegally entering the apartment and staying there for approximately seven hours while waiting for the warrant, all the while restraining the occupants from movement and from answering the telephone. Officer Fabiano, in addition, searched the apartment before the warrant issued and discovered hidden pornographic videos and paraphernalia which he then discussed with Ms. Webster in front of her friend, and, in the words of the defendant's counsel, "befouled before [Ms. Webster's] eyes [her home with] the revolting spectacle of [his] spitting tobacco juice into the kitchen sink."

Officer Fabiano's behavior, in particular, was thuggish, wholly unworthy of a professional who was sworn to protect the citizens of Boston. The motion judge rightly observed that his behavior "should be reported to his superiors for their review. Whether he be disciplined or subject to additional training is a function of the police department. Even young officers should know a search without the warrant is a violation of the constitutional rights of the citizenry."

The question, though, is whether the police misconduct warrants suppression of the mattress pistol even if, as the judge found, no fruits of the misconduct were used in the application for the search warrant and there was probable cause for the warrant's issuance. Relying principally on *United States* v. *Madrid,* 152 F.3d 1034 (8th Cir. 1998), the defendant argues that it does.

The police conduct in *Madrid,* in many respects, resembled the police conduct in this case. In anticipation of a search warrant, police "secure[d]" a house from the inside, detained the occupants, made "plain view" observations, and searched through mail, personal documents, and a notebook before the warrant issued. *Id.* at 1035-1036. Nevertheless, a magistrate (and a judge of the United States District Court for the Northern District of Iowa, in adopting the magistrate's report and recommendation) denied the defendant's motion to suppress evidence seized in the house after a warrant eventually issued, finding that there was probable cause for the warrant even after excising illegally obtained information from the application. *Id.* at 1036. See *Franks* v. *Delaware,* 438 U.S. 154, 171-172 (1978); *Commonwealth* v. *Assad,* 393 Mass. 418, 422 (1984).

The United States Court of Appeals for the Eighth Circuit

disagreed, stating that it was "not convinced that the warrant was supported by probable cause or that the decision to issue the warrant was unaffected by the illegally obtained information," references to which appeared throughout the application. *Madrid, supra* at 1040. The court then rejected the government's suggestion that it should apply the "inevitable discovery" rule, see, e.g., *Commonwealth* v. *O'Connor*, 406 Mass. 112, 117 (1989), stating that "the only way we can effectuate the warrant requirement's deterrent function is to decline to extend the application of the inevitable discovery [rule] to the facts of this case." *Madrid, supra* at 1041.

Here, although the police misconduct was similar to, and in some respects more outlandish than, the misconduct in *Madrid*, the warrant application was sufficient after removing any product of the misconduct. Because the application was sufficient, we have no need to explore whether the inevitable discovery rule validates the search or whether that rule is inapplicable in the face of improprieties like those that plagued this case.

The difference between the role that police misconduct played in procuring the warrant in *Madrid* and in this case is significant, because the courts of this Commonwealth have never used suppression as a tool for disciplining police or as a sanction for prosecutorial misconduct unrelated to acquisition of evidence. To be sure, deterrence of future misconduct is one aim of the suppression remedy, see *Commonwealth* v. *Lora*, 451 Mass. 425, 438 (2008), but so too is a desire to avoid judicial participation in the use of evidence obtained in violation of a defendant's constitutional rights. See generally *Commonwealth* v. *Manning*, 373 Mass. 438, 444 (1977). See, e.g., *Terry* v. *Ohio*, 392 U.S. at 12-13 ("rule excluding evidence seized in violation of the Fourth Amendment has been recognized as a principal mode of discouraging lawless police conduct. . . . The rule also serves another vital function — 'the imperative of judicial integrity.' *Elkins* v. *United States*, 364 U.S. 206, 222 [1960]. Courts which sit under our Constitution cannot and will not be made party to lawless invasions of the constitutional rights of citizens by permitting unhindered governmental use of the fruits of such invasions"); *Dunaway* v. *New York*, 442 U.S. 200, 218 (1979) ("When there is a close causal connection between the illegal seizure and the

confession, not only is exclusion of the evidence more likely to deter similar police misconduct in the future, but use of the evidence is more likely to compromise the integrity of the courts"); *United States* v. *Payner*, 447 U.S. 727, 735 n.8 (1980) ("the Fourth Amendment exclusionary rule, like the supervisory power, is applied in part 'to protect the integrity of the *court*, rather than to vindicate the constitutional rights of the defendant' " [quoting Marshall, J., dissenting]); 1 LaFave, Search & Seizure § 1.1(f), at 18-19 (3d ed. 1996) (among purposes of exclusionary rule is deterrence of police misconduct and preservation of integrity of the law).

Here, the mattress pistol was not obtained in violation of the defendant's constitutional rights, and its use as evidence had no adverse impact on the law's integrity. Suppression of the mattress pistol, therefore, was not warranted. The remedy for unconstitutional police conduct lies in departmental discipline, a civil action, or, ultimately and if sufficiently durable and widespread, the voting booth.

The judgment on Suffolk County indictment no. 04-10299-006 is vacated. The order denying the defendant's motion to suppress is reversed, and a new order is to enter allowing the motion with respect to the defendant's statement at the time of his arrest and the pistol found on his person at that time, and denying the remainder of the defendant's motion. The remaining judgments are affirmed. The case is remanded for further proceedings consistent with this opinion.

*So ordered.*