Rubin, J.
(dissenting). I join Justice Agnes’s dissenting opinion. Three African-American men were involved in the commission of a burglary, one dressed in red, two in black, at least one of those wearing a hooded sweatshirt (hoodie). They stole a backpack, a laptop computer, and five custom baseball hats. There were conflicting reports about the direction in which they ran.
Under art. 14 of the Massachusetts Declaration of Rights, the police were not entitled on this basis thirty minutes later to stop any pair of African-American men in dark clothes walking within *499 a twelve-square-mile area[1] so long as at least one of them was wearing a hoodie — a widely worn fashion particularly among young people of color, see, e.g., Staples, Young, Black, Male and Stalked by Bias, N.Y. Times, Apr. 14, 2012;[2] Chasmar, Smithsonian Director Wants Trayvon Martin’s Hoodie, Washington Times, July 31, 2013.[3] And, as Justice Agnes describes, at least given the settled law that we are required to apply, this result does not change even if the individuals flee when approached by the police. Ante at 488-489. See Commonwealth v. Mercado, 422 Mass. 367, 371 (1996).
What ultimately divides the panel is the significance of this latter-described evasive action. I write separately because I do not think we need to address its significance in this case, and were it not for a majority of the court reaching the question, I would not do so. Although the majority holds, ante at 478, and Justice Agnes’s dissent assumes, ante at 493-494, that the defendant and his companion were stopped only after they ran from the police, they were, as a matter of law, stopped before that, while they were simply walking down the street. Boston police Officer Luis Anjos, after seeing them walking on the sidewalk yelled out, “Hey guys, wait a minute.” This was a “command to stop,” not a request, and it marks the point at which the defendant was seized for purposes of the Massachusetts Declaration of Rights. Commonwealth v. Nestor N., 67 Mass. App. Ct. 225, 228 (2006) (Duffly, J.). Cf. Commonwealth v. Martin, 467 Mass. 291, 301, 303 (2014) (where officer testified that he said, “Hold on a second, I want to talk to you,” and judge “found that [he] had ‘called out to [the defendant] to hold up or stop we want to speak with you or words to that effect,” the officer’s words more closely resemble a ‘request to speak with the defendant and ask questions’ . .. than a ‘command to stop’ ”). This seizure came before the individuals had engaged in their only suspicious conduct described in this case, i.e., jogging and then running from the *500 police.
At the time of the stop, the police knew there were two individuals walking on the street, not three. They did not appear to have any of the proceeds of the burglary on their persons. They were stopped in a densely populated urban area thirty minutes after the burglary and about one mile away from the scene. Indeed, at the hearing on the motion to suppress, the arresting officer disclaimed having concluded that these individuals were suspects in the burglary — he would state only that Officer Anjos had reached that conclusion. Although of course reasonable suspicion must be measured on facts and circumstances known to police officers prior to the seizure, in this case it can come as no surprise that these two individuals never have been linked in any way to the burglary of which Officer Anjos testified he suspected them.
As I said at the outset, and as appears undisputed here, it is impermissible for the police to stop any two black men walking on the street wearing hoodies simply because thirty minutes earlier and one mile away two black men in dark clothing, at least one of whom was wearing a hoodie, were among three men involved in a burglary. Action of this type clearly violates the protection our Massachusetts Declaration of Rights provides to all persons in the Commonwealth. It is also corrosive of the relationship between law enforcement and the members of communities they are sworn to protect. Yet that describes what happened here. I respectfully dissent.
*501 Appendix A.
[[Image here]]
*502 Appendix B.
[[Image here]]

As Justice Agnes explains, even if the individuals were walking, they could have gone two miles in that time, in any direction. Ante at 488-489 (Agnes, J., dissenting). The area of the circle described by this two-mile radius (area = it x radius[2]) is approximately 12.57 square miles.

Staples, Young, Black, Male, and Stalked by Bias, N.Y. Times, Apr. 14, 2012, at SR10.

Chasmar, Smithsonian Director Wants Trayvon Martin’s Hoodie, Washington Times, July 31, 2013, available at http://www.washingtontimes.com/news /2013/jul/31/smithsonian-director-wants-trayvon-martins-hoodie/ [http://perma.cc /F35B-VPL9].